ANDREW J. McGANN *v.* CAPITAL SAVINGS BANK & TRUST CO.

(89 A2d 123)

February Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed May 6, 1952.

*Daniels & Reed* and *Donald M. Newman* (of the New York bar) for the plaintiff.

*Robert H. Ryan* for the defendant.

SHERBURNE, C. J. This is a proceeding in equity to have the defendant adjudged a trustee of the proceeds of fire insurance received upon certain chairs alleged to have been owned by the plaintiff, and for an accounting therefor. After making findings of fact the chancellor dismissed the bill of complaint, and the plaintiff excepted. The sole question presented is whether the decree is supported by the findings of fact.

So far as here material the findings show the following facts: The Tropical Chair Company, Inc. in 1946 was the owner of patent rights in a type of beach chair. In September of that year it entered into a contract with Vermont Woodcrafters, Inc. of Montpelier, for the manufacture of such chairs, under an arrangement whereby as the Tropical Company received orders for sale of chairs, copies of the orders were to be transmitted to the Vermont Woodcrafters, together with shipping instructions, and payment for the chairs was to be made upon shipment. As the chairs were completed they were wrapped for shipment and placed in the storage facilities of the Vermont Woodcrafters to await shipping instructions. Perry H. Merrill was the president and a director of Vermont Woodcrafters. Harold P. Parker was a director thereof, and was also president, treasurer and principal executive officer of the defendant Bank. The plaintiff McGann was president of the Tropical Company. In February 1947, Merrill made it known to McGann that he was in need of financial assistance, and McGann reminded Merrill that the Tropical Company was without funds, and that in the event he should advance money for the manufacture, Vermont Woodcrafters would be regarded as manufacturing chairs for him individually, and Merrill agreed, in behalf of Vermont Woodcrafters, that in the event personal advances were received from McGann, Merrill would provide insurance coverage on the manufactured goods for McGann's protection. By June 2, 1947, the plaintiff had made advances of money and materials in the total amount of $7,827.25. By that date Vermont Woodcrafters had completed the manufacture of 2500 chairs under the Tropical patent. The chancellor expressly finds that the chairs so manufactured were on or before June 2, 1947, appropriated to the contract, that the plaintiff had received and accepted credit for the payment of 2500 chairs, and that the property in the chairs was transferred to the plaintiff on or before that date. According to finding 12, "Harold P. Parker, as executive officer of the defendant

Bank, frequently visited the manufacturing and warehouse properties of the Vermont Woodcrafters, Inc. In connection with his duties as officer of the Bank, Parker examined the stock and inventories. Prior to June 24, 1947, Parker made such a visit and looked over the inventory of the manufactured stock in storage. He learned that the Vermont Woodcrafters had manufactured the beach chairs thus stored for the plaintiff or the Tropical Chair Company. As an officer of the Bank it came to Parker's knowledge that the plaintiff had made substantial advances to the Vermont Woodcrafters by way of cash and materials." On June 24, 1947, Vermont Woodcrafters executed a chattel mortgage to the defendant upon "2500 lawn or beach chairs in package ready for shipment," and other property, including chairs in various stages of manufacture, to secure a note for $15,000.00 covering prior indebtedness to the defendant. The mortgage provided that the mortgagor should keep the property fully insured against loss by fire for the benefit of the mortgagee. At the time of its execution the 2500 Tropical beach chairs manufactured at the instance of the plaintiff were in storage facilities of the Vermont Woodcrafters' plant in Montpelier. They were never moved therefrom. On December 22, 1947, the Vermont Woodcrafters' plant burned. The property, real and personal, was covered by policies of insurance to which had been attached riders making the loss payable to the defendant "as its interest may appear." Also attached to the policies were standard manufacturers' riders, providing:

> "The policy covers property described belonging to Insured or sold but not removed; also on the Insured's interest in and/or legal liability for similar property held by the Insured as follows, viz: In trust or on commission, or on joint account with others, or in storage or for repairs."

Following the fire there was paid to the defendant in settlement of the insurance loss the sum of $24,526.05. "Of this sum $4,079.54 was paid for fire damage to the real estate and $20,446.51 for damage to the personal property. All of the money received by the defendant Bank was applied on direct or indirect indebtedness of Vermont Woodcrafters Corporation, except the sum of $6,779.54, which was paid over by the defendant Bank to Vermont Woodcrafters, Inc. In the payment of $20,446.51 for damage to personal property $8,938.80 was paid by the Insurers for damage to

2483 finished chairs. 2383 of such chairs were chairs manufactured under the Tropical patent." The plaintiff has received none of the proceeds of such insurance.

 There is no express finding that the defendant Bank had notice of the plaintiff's title to the 2500 Tropical beach chairs. We do not for the purpose of reversing a judgment read into the findings of fact something which is not there, and which is not a necessary inference from the facts found. *Hinsman* v. *Marble Savings Bank,* 102 Vt 217, 223, 147 A 270; *Watkins' Estate* v. *Howard National Bank,* 113 Vt 126, 137, 30 A2d 305. But we are bound to construe a record reasonably, and this requirement applies to every part of the record, including the findings of fact. *St. Albans Hospital* v. *City of St. Albans,* 107 Vt 59, 62, 176 A 302. Corporations can do business only through officers or agents, and any notice or knowledge imparted to an officer or agent authorized to receive the same is actually imparted to the corporation. *Pellon* v. *Conn. Gen. Life Ins. Co.,* 105 Vt 508, 520, 168 A 701. There can be no question about Parker being such an officer. Although a director of Vermont Woodcrafters, the findings show that Parker was acting for the defendant Bank in taking the chattel mortgage, hence any knowledge received by him while so acting became, by imputation, known to the defendant Bank. *Rawleigh Co.* v. *Pierce,* 92 Vt 44, 47, 102 A 96.

 It is a rule of general application that one who has knowledge of facts sufficient to induce a prudent man to inquire in respect to other facts germane to the matter in hand, will be charged with knowledge of such other and further facts as he might have learned by reasonable diligence in prosecuting his inquiry in the right direction. *Gifford* v. *Rutland Savings Bank,* 63 Vt 108, 114, 21 A 340, 11 LRA 794; *Farmers Exchange* v. *Lowney Co.,* 95 Vt 445, 450, 115 A 507. Taking it by its "four corners," finding 12, if it does not show actual notice to the defendant Bank of plaintiff's title to the 2500 chairs, it at least shows knowledge of facts sufficient to compel the inference that the defendant Bank could have learned by diligent inquiry that the plaintiff owned the chairs. Under the circumstances the defendant Bank must be charged with knowledge of the plaintiff's title.

 Under our decisions the continuance of the vendor in possession of chattels after a sale renders the sale fraudulent *per se* and void as against his creditors and as to bona fide purchasers

without notice. A few of our cases so holding are *Hart* v. *Farmers' & Mechanics' Bank,* 33 Vt 252, 263; *Daniels* v. *Nelson,* 41 Vt 161, 164; *Foss* v. *Towne,* 98 Vt 321, 127 A 294; *Hyatt* v. *Wiley,* 107 Vt 120, 176 A 119; *Newton* v. *Thomas,* 111 Vt 259, 264, 15 A2d 589; *Coburn* v. *Drown,* 114 Vt 158, 159, 40 A2d 528. In such case a creditor with full knowledge of the sale may attach the chattels sold. *Hutchins* v. *Gilchrist,* 23 Vt 82, 89; *Rice* v. *Courtis,* 32 Vt 460, 469; *Hart* v. *Farmers' & Mechanics' Bank, supra; Perrin* v. *Reed,* 35 Vt 2, 8, 9. The placing of the chairs wrapped for shipment in storage on the Vermont Woodcrafters' premises was not a change of possession so open, visible, unequivocal, exclusive and continuous as to apprise the community, or those accustomed to deal with the vendor, that it had ceased to be the owner of the chairs, according to the test stated in *Foss* v. *Towne, supra.* Nor were the chairs shown to be ponderous objects, incapable of personal possession and difficult of removal, as in the cases reviewed in *Hyatt* v. *Wiley, supra.* The retention of the chairs made the sale to the plaintiff fraudulent per se and void as to creditors, and the chairs remained liable to attachment by the creditors of Vermont Woodcrafters.

In so far as it has been called to our attention, all of our cases, except *Coburn* v. *Drown, supra,* in holding such sales fraudulent and void as to creditors, had to do with the validity of attachments by creditors. The defendant calls our attention to § 26 of the Uniform Sales Act, V. S. 47, § 7879, which reads:

> "Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods and such retention of possession is fraudulent in fact or is deemed fraudulent under any rule of law, a creditor of the seller may treat the sale as void."

It argues that in treating the sale as void the defendant was not limited to its remedy by legal process, but because it was a creditor it could, with notice of the prior sale of the chairs, take a valid mortgage thereon, or, in other words, as a creditor with notice it can get as good a mortgage as a bona fide mortgagee for value without notice. The defendant also cites two cases from other jurisdictions, which were decided before the enactment of the Uniform Sales Act, and which support its contention.

In *Judd* v. *Langdon,* 5 Vt 231, 235, the Court states: "The con-

tract of sale was sufficiently complete as between the plaintiffs and Wilson, but not so as it regards the attaching creditors of Wilson, or bona fide purchasers from him." In *Whitney* v. *Lynde,* 16 Vt 579, 586, speaking of the necessity of notice to one having the keeping of a mare in case of a sale by the owner, the Court states: "Without this notice the possession cannot be considered as changed, so that the property should not be subject to attachment at the suit of the creditors of the vendor." *Ellis* v. *Howard,* 17 Vt 330, 335, states: "unless possession accompanies and follows the sale of personal property, it is liable to attachment and execution for the debts of the vendor." In *Rice* v. *Courtis,* 32 Vt 460, 467, the Court states: "we say, indeed, sometimes, that the sale, without a change in the possession, is not perfected as against creditors. This is not precisely accurate. What we mean is, that the property is still liable to attachment upon process against the former holder, because an act has been omitted which is indispensable to release it from that liability. And this is an act affecting the rights under process only." And on pp 468, 469, "Our books abound with the expressions, that a bona fide sale without a change of possession is not valid as against creditors. But to be strictly accurate it should be said, that such sales do not prevent the property from being attached upon process against the vendor. And that this is the real point of the doctrine is made apparent by the consideration that one may attach property in this State so situated, notwithstanding he may have full notice of the transfer and have no reason to doubt or question its perfect fairness and adequate consideration. But in regard to subsequent purchasers the rule is otherwise." *Houston* v. *Howard,* 39 Vt 54, 60, speaks of a sale without change of possession as being "voidable by attaching creditors." *Rothchild* v. *Rowe,* 44 Vt 389, 393, 394, speaks of such change of possession as will "protect property from attachment by the creditors of the vendor." In *Weeks* v. *Prescott,* 53 Vt 57, 71, the Court, in speaking of whether a sale was fraudulent in law, states: "This depends upon whether there was such a possession taken and retained by the vendee that he can maintain his title against an attaching creditor of the vendor. It has been invariably held in this State that such possession must be open, notorious, and exclusive; and that where the possession taken was wanting in any of these requisites, the property remained liable to attachment by the creditors of the vendor, notwithstanding the bona fides of

the transaction between the vendor and vendee." In *Wheeler* v. *Selden,* 63 Vt 429, 21 A 615, 12 LRA 600, referring to the rule that to render a sale valid against the vendor's creditors there must be a change of possession, the Court states: "Where there is a joint possession by the vendor and vendee, the property is liable to attachment upon the vendor's debt if a candid observer would be at a loss to determine which of the two has the chief control and possession of it." See also *Hart* v. *Farmers & Mechanics Bank, supra.*

 It is not apparent that the cited section of the Uniform Sales Act has changed our law. Since its adoption the Court speaks in *Foss* v. *Towne, supra,* and in *Hyatt* v. *Wiley, supra,* about what is necessary for a vendee to do to "perfect his title against attachment by the vendor's creditors," and in *Newton* v. *Thomas, supra,* about property remaining "liable to attachment by the creditors of the vendor." In *Coburn* v. *Drown, supra,* no creditor was involved. Although our cases frequently state that a sale without a change of possession renders the sale void against creditors of the vendor, it is apparent from the foregoing excerpts from our cases, that what is meant is that such sales are void only against attaching creditors or against attachment by creditors.

This is further shown in *Eaton* v. *Cooper,* 29 Vt 444, 454. In that case the plaintiff purchased goods at a sheriff's sale, and the defendants, claiming that the sale was void because of a fraudulent design between the purchaser and the debtor, attached the goods, which had been carried to and left in the debtor's store after the sale, and after the attachment sold at retail and otherwise disposed of the attached goods. The Court said: "The creditors have no right to the property, except in a particular mode, i.e., under process, and in payment of their debts. For no other purpose can they, or any one in their behalf, take the property. And the defendants, being shown to have used the process as a mere cover to get the property into their possession in order to put it to their own use, are in no better condition than if they had taken the property without process." Another like case is *Owen* v. *Dixon,* 17 Conn 492, holding that a creditor can only proceed in the manner provided by law on process by attachment, and must pursue his action to judgment. There the creditor, in a suit against the fraudulent vendor attached the property in the possession of the fraudulent vendee, but before judgment abandoned his process,

and sold the property by authorization from the fraudulent vendor, and applied the proceeds in payment of his debt. The creditor was held liable to the vendee in trover. Directly in point is *Tolbert* v. *Horton,* 31 Minn 518, 15 NW 647, 648, a case of a creditor taking a chattel mortgage in which a prior mortgage, fraudulent against creditors under a statute, was recited. The court stated: "The conveyance could only avail the defendant as a conveyance, and would not aid him as a creditor, invoking the statute as such. The object and effect of statutes avoiding fraudulent conveyances of property as to creditors is not to transfer any right of property, nor to dispense with legal remedies for the satisfaction of debts, but to remove obstacles fraudulently interposed to the enforcing of these remedies notwithstanding the fraud. The debtor could not sustain his own conveyance for the process of the law, and thus indirectly, by his own act, defeat the title of the plaintiff which he could not have assailed directly." This case cites *Southard* v. *Beimer,* 72 NY 424, which states: "A creditor at large cannot assail an assignment or other transfer of property by the debtor as fraudulent against creditors, but must first establish his debt by the judgment of a court of competent jurisdiction, and either acquire a lien upon the specific property or be in a position to perfect a lien thereon, and subject it to the payment of his judgment upon the removal of the obstacle presented by the fraudulent assignment or transfer." To like effect is Bump on Fraudulent Conveyances, (4th Ed.) §§ 450, 451. After stating to the effect that creditors of a vendor can only appropriate property fraudulently transferred by him to the payment of their debts in the mode which the law prescribes, and that they cannot seize it without legal process, this authority states: "Consequently, the expression that a fraudulent transfer is void against creditors simply means that the rights of creditors as such are not, with respect to the property, affected by such transfer, but that they may, notwithstanding the transfer, avail themselves of all the remedies which the law has provided in favor of creditors, and that in pursuing these remedies they may treat the property as though the transfer had not been made, that is, as the property of the debtor. The transfer is ineffectual to shield the property in the hands of the grantee from the just claims of the creditors of the grantor when these claims are prosecuted against it in the manner pointed out by law. His title, however, is good against even creditors, unless they protect themselves

against him by pursuing that prescribed course by which alone the property can be made available for the satisfaction of debts. A creditor at large, as it is termed, cannot impeach the conveyance, but only a creditor having some process on which the property may be lawfully seized and by which it is made liable, either immediately, or ultimately, to be appropriated in satisfaction of his debt. Without such process he has no right to meddle with the property, and if he does so he is liable to all consequences of an unlawful interference equally with any other person." As we construe our cases making the vendor's retention of the possession of chattels sold fraudulent and void as to creditors of the vendor, a creditor at large, as it is termed, cannot impeach the sale, but only a creditor having some process on which the chattels may be lawfully attached and by which they are made liable, either immediately, or ultimately, to be appropriated in payment of his debt. We interpret the quoted section from the Uniform Sales Act as leaving the manner, in which a creditor may treat the sale as void, to be determined by our decisions in such cases.

The two cases cited by the defendant are *Allen* v. *Steiger,* 17 Colo 552, 31 P 226, and *Brown* v. *Webb,* 20 Ohio 389. Both of these cases hold, that a creditor of a party making a fraudulent conveyance, with notice of the fraud, may take a valid mortgage to secure his claim without being required to resort to legal process to reach the goods. The first case was decided under a statute making a sale of goods without delivery or change of possession conclusively presumed to be fraudulent and void as against creditors. We decline to follow these cases or to depart from our previous holdings.

■ A "purchaser" includes a mortgagee, and "purchases" means taking as a mortgagee. § 76 of the Uniform Sales Act, V. S. 47, § 7929. Since the defendant took its mortgage as a purchaser and must be charged with knowledge of the plaintiff's title, the sale of the chairs to the plaintiff was not fraudulent and void as to it.

■ ■ Under the standard manufacturers' riders attached to the fire insurance policies, in the phrases "sold but not removed," "in trust" and "in storage" it was meant by insurer and insured that the risk taken should cover and adhere to the same property, after it had left the ownership of the person named in the policies, and by which it was also meant to follow and cover that property in the vendee of the original owner named in the policies. In such

a case the right to insure and the right to recover is put upon the fact, that one having possession of the property, exclusive as to all but the owner, to whom he is responsible, has the right to protect from loss, so that its value may be rendered to the owner when he calls for his own. Although the "Tropical" chairs had been sold to and paid for by the plaintiff and the property in them had been transferred to the plaintiff, their place of storage had not been changed, consequently the insurance upon them, had it been recovered by Vermont Woodcrafters, would have been recovered in trust for the plaintiff. *Waring* v. *Indemnity Fire Ins. Co.,* 45 NY 606.

 Since the defendant, at the time it took the chattel mortgage from Vermont Woodcrafters, must be charged with knowledge of the plaintiff's title to the 2500 Tropical chairs, as we have previously indicated, it stands in no better position relative to the insurance received thereon than Vermont Woodcrafters would have stood, had it recovered such insurance. It is a familiar principle of equity that a trust is implied whenever the circumstances are such, that the person taking the legal estate, whether by fraud or otherwise, cannot enjoy the beneficial interest without violating the rules of honesty and fair dealing. *Miller* v. *Belville,* 98 Vt 243, 247, 126 A 590. "One of the most common cases in which a court of equity acts upon the ground of implied trust in invitum, is where a party has received money which he cannot conscientiously withhold from another party. It has been well remarked that the receiving of money, which consistently with conscience cannot be retained, is in equity sufficient to raise a trust in favor of the party for whom, or on whose account, it was received. This is the governing principle in all such cases, and therefore, whenever an interest arises the true question is, not whether money has been received by the party, of which he could not have compelled the payment, but whether he can now, with a safe conscience, ex aequo et bono, retain it." 2 Story's Equity Juris. (12th Ed), § 1255. Knowing that the plaintiff owned the Tropical chairs the defendant had no right to apply the proceeds of the insurance upon such chairs, or any part thereof, upon the indebtedness of Vermont Woodcrafters to it, or to turn any part of such proceeds over to that concern, but must here account therefor, as in the case of any other trustee.

$8,938.80 received by the defendant from insurance was upon 2483 finished chairs, of which only 2383 were manufactured under

the Tropical patent, so that, so far as appears, only that number of the plaintiff's chairs were damaged. There is no way to determine from the findings what proportion of the $8,938.80 received from insurance upon 2483 chairs should be apportioned to the 2383 chairs owned by the plaintiff, since it does not appear what the relative values of the different kinds of chairs were. It will, therefore, be necessary to remand the cause, so that the amount of insurance received on account of plaintiff's chairs can be ascertained. When such amount is ascertained decree should be entered for the plaintiff to recover that amount with interest, and his costs.

*Decree reversed, and cause remanded for further proceedings in accordance with the views herein expressed.*