### Leo F. Legault v. Suzanne Legault

[459 A.2d 980]

No. 101-81

Present: Barney, C.J., Billings, Hill and Peck, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed February 9, 1983

*Bernasconi & Koch*, Barre, for Plaintiff/Cross-Appellant.

*McKee, Giuliani & Cleveland*, Montpelier, for Defendant-Appellant.

**Hill, J.** Plaintiff instituted this action in equity to recover a certain sum of money allegedly belonging to him. The trial court, concluding that a portion of the money sought by plaintiff had wrongfully passed into the hands of defendant, imposed a constructive trust on said money, and named defendant trustee of the wrongfully held funds. Plaintiff appeals the trial court's decision refusing to award interest and limiting the amount of money placed within the trust, while defendant excepts both to the imposition of the trust itself, as well as the finding that defendant was not a natural born child of plaintiff's marriage. We affirm.

The facts as found by the trial court are as follows. On the 24th of June, 1943, plaintiff and one Irene Stacey Chartier were joined in marriage in Montreal, Quebec. Prior to their marriage, both parties entered into an antenuptial agreement which provided that all property "belonging to the first deceased on the day of his/her death" shall pass to the other party by right of survivorship. This agreement was to take effect only if, at the time of either party's death, there were no surviving children born of the couple's marriage. At the time of marriage, Mrs. Legault was a widow with two male children from a previous marriage. Additionally, the trial court found that no children were born of the marriage between plaintiff and Mrs. Legault, that no children were ever adopted during the course of their marriage, and that the couple raised the defendant as their foster daughter.

In due time, the couple and defendant moved to Barre, Vermont. Plaintiff worked industriously throughout the course of the thirty-four year marriage, and each week turned his paycheck over to Mrs. Legault, who in turn would pay the bills and, he believed, deposit the balance in a joint savings account held by plaintiff and Mrs. Legault. In reality, said money was being deposited in several joint accounts held by

defendant and Mrs. Legault, and it was not until after Mrs. Legault's death, on February 15, 1978, that plaintiff discovered that the couple's alleged joint account had never existed.

It was established at trial that the sum of money sought by plaintiff was $26,067.03. The trial court found that of the total, $13,567.03 was directly traceable to three main sources: (1) the balance of wages earned by plaintiff; (2) the proceeds from the sale of real estate jointly owned by the couple on River Street in Barre; and (3) the proceeds from the sale of a business operated by plaintiff. In addition, the trial court found that the remaining $12,500.00 represented the proceeds from the sale of a house and garage inherited by Mrs. Legault from her father.

On February 14, 1978, the day prior to the death of Mrs. Legault, defendant withdrew the full $26,067.03 from the various bank accounts held jointly by her and Mrs. Legault, and redeposited that sum in her own individual account. Upon learning that the money had never been deposited in his name, plaintiff demanded the money from defendant, claiming that at least a portion of the money belonged to him. Defendant, claiming full ownership rights, refused to deliver the money to plaintiff. On March 26, 1979, defendant was enjoined from disposing of the money or utilizing it in any way for her own benefit, pending the outcome of plaintiff's present action.

In light of the above findings, the trial court held that it was the intention of plaintiff, and the representation of Mrs. Legault, that the money given her by plaintiff was to be deposited in the couple's joint account subject to plaintiff's survivorship rights. Accordingly, the trial court imposed a constructive trust on $13,567.03, the sum of money which it believed had wrongfully passed into defendant's hands. The trial court refused to find, however, that plaintiff had a like right to the proceeds from the sale of property inherited by Mrs. Legault; thus, it refused to include the remaining balance of $12,500.00 within the trust.

We begin our analysis with the exceptions raised by defendant, the first of which is that the trial court erred by failing to find that defendant was the legitimate daughter of plaintiff and Mrs. Legault. The relevancy of defendant's legitimacy is limited to its effect on the validity of the antenuptial agreement. However, as noted below, we find the

agreement inapplicable to the facts of the present case. Therefore, this issue need not be addressed.

Defendant next asserts that the trial court committed error when it imposed a constructive trust on the money which it deemed to have wrongfully passed to defendant. The essence of defendant's position is that the existence of a confidential relationship between her and plaintiff was an essential prerequisite to the imposition of the constructive trust. Defendant's challenge, however, misconstrues both the reasoning of the trial court in imposing the constructive trust, as well as the existing case law governing the establishment of such trusts. Therefore, a brief review of the principles underlying this equitable doctrine is necessary.

■■ " 'It is a familiar principle of equity that a trust is implied whenever the circumstances are such, that the person taking the legal estate, whether by fraud or otherwise, cannot enjoy the beneficial interest without violating the rules of honesty and fair dealing.' " *Lorenz* v. *Rowley*, 122 Vt. 480, 485, 177 A.2d 364, 368 (1962) (quoting *McGann* v. *Capital Savings Bank & Trust Co.*, 117 Vt. 179, 189, 89 A.2d 123, 130 (1952)); *Miller* v. *Belville*, 98 Vt. 243, 247, 126 A. 590, 592 (1924). Simply put, the "constructive trust is a tool often used by courts to prevent unjust enrichment." *Preston* v. *Chabot*, 138 Vt. 170, 175, 412 A.2d 930, 933 (1980). Such trusts will arise whenever title is acquired through a confidence which has been abused, but the forms and varieties of such trusts will differ depending on the circumstances. *Miller* v. *Belville, supra*, 98 Vt. at 248, 126 A. at 593 (citing *Springer* v. *Springer*, 144 Md. 465, 478–80, 125 A. 162, 168–69 (1924)).

■■ Thus, the true question is "not whether money has been received by the party, of which [she] could not have compelled the payment, but whether [she] can now, with a safe conscience, ex aequo et bono, retain it." *McGann* v. *Capital Savings Bank & Trust Co., supra*, 117 Vt. at 189, 89 A.2d at 130. In such situations, equity works to disallow the retention of the money. Hence, "the trust is declared in order that the court may lay its hands upon the property and wrest it from the wrongdoer," *Miller* v. *Belville, supra*, 98 Vt. at 248, 126 A. at 593 (citing *Edwards* v. *Culbertson*, 111 N.C.

342, 345, 16 S.E. 233, 234 (1892)), "in favor of the party for whom, or on whose account, it was received." *McGann* v. *Capital Savings Bank & Trust Co.*, *supra*, 117 Vt. at 189, 89 A.2d at 130. Finally, when dealing with transactions between husband and wife "brought about by anything amounting to constructive fraud, [those transactions] are voidable against all persons participating other than bona fide purchasers." *Griffin* v. *Griffin*, 125 Vt. 425, 443, 217 A.2d 400, 414 (1966) (citing *Peyton* v. *William C. Peyton Corp.*, 23 Del. Ch. 321, 342, 7 A.2d 737, 747 (1939)); *Commercial Credit Plan, Inc.* v. *Beebe*, 123 Vt. 317, 321–22, 187 A.2d 502, 506 (1963).

In the present case, the record supports the trial court's finding that the money given to Mrs. Legault by plaintiff, which included his wages and the proceeds from the sale of certain real estate and business, was given to her with the understanding that said money was to be deposited in the couple's alleged joint account. In fact, throughout the couple's thirty-four year marriage, such was not the case, since the alleged joint account never existed. In view of these circumstances, the trial court properly ruled that it would be inequitable for defendant, now in possession of the money, to retain it. Since defendant was not a bona fide purchaser for value, a status which would give her an independently supportable claim to the money, the judgment of the trial court designating her trustee of the wrongfully held funds was warranted.

We next consider the exceptions raised by plaintiff. Briefly stated, plaintiff contends that the trial court erred: first, in its conclusion that plaintiff had no right to the proceeds from the sale of the property inherited by Mrs. Legault; second, in its failure to find that said proceeds amounted only to $10,000.00, not $12,500.00; and third, in its refusal to award interest on the amount it found to have belonged to plaintiff. We take the exceptions in this order.

Plaintiff first insists that he had a right to the remaining $12,500.00 either on the basis of the above noted antenuptial agreement, or, in the alternative, on the doctrine of unjust enrichment. With regard to the antenuptial agreement, we note that by its very language, it relates solely to that property held by either party at his or her death. There

is nothing in the agreement limiting either party's right to dispose of his or her assets during his or her lifetime. The trial court found that the subject proceeds originated from property inherited by Mrs. Legault, that said proceeds were deposited in a bank account jointly held with defendant (the validity of which has never been questioned), and that said proceeds were withdrawn from this account *prior* to the death of Mrs. Legault. Hence, recovery cannot be had by virtue of the antenuptial agreement.

██ Moreover, the equitable doctrine of unjust enrichment rests upon the principle "that a man shall not be allowed to enrich himself unjustly at the expense of another." *Morse* v. *Kenney,* 87 Vt. 445, 449, 89 A. 865, 867 (1914). In other words, the inquiry is whether, in light of the totality of circumstances, *id.* (citing *Board of Highway Com'rs.* v. *City of Bloomington,* 253 Ill. 164, 97 N.E. 280 (1911)), it is against equity and good conscience to allow defendant to retain what is sought to be recovered. *Wilson* v. *Alexander,* 139 Vt. 279, 280, 428 A.2d 1089, 1090 (1981); *Finnegan* v. *State,* 138 Vt. 603, 606, 420 A.2d 104, 106 (1980). Thus, "whether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction. It must be a realistic determination based on a broad view of the human setting involved." *McGrath* v. *Hilding,* 41 N.Y.2d 625, 629, 363 N.E.2d 328, 331, 394 N.Y.S.2d 603, 606 (1977).

██ Plaintiff asserts that even if the property was inherited by Mrs. Legault, defendant would be unjustly enriched if she were allowed to keep the proceeds, since he did a substantial amount of work on the house while living there. In weighing the equities involved and the totality of circumstances in the present case, the trial court simply refused to extend plaintiff's claim beyond that money which it credited to his hard labor. The trial court's decision was well within its equitable powers, and we are not persuaded that there was an abuse of discretion.

Plaintiff also challenges the trial court's finding that the proceeds from the sale of the inherited property totalled $12,500.00, rather than the $10,000.00 sale price testified to by defendant. A review of the record reveals, however, that

532

amongst the conflicting testimony regarding the sale price of the property was plaintiff's own testimony that the property was sold for $12,500.00. There being evidence to support the trial court finding, we cannot say that it was "clearly erroneous." *Wells* v. *Village of Orleans, Inc.,* 132 Vt. 216, 221, 315 A.2d 463, 466 (1974).

 Finally, we reject plaintiff's contention that the trial court erred in not awarding interest on the money wrongfully withheld. "[I]nterest is not the unqualified right of the prevailing litigant. Instead, in matters of interest not involving contractual obligation[s] . . . , a trial judge is invested with broad discretion to allow interest in accordance with principles of equity." *Corallo* v. *Essex County Welfare Board,* 140 N.J. Super. 414, 417, 356 A.2d 426, 427 (1976) (citations omitted). In short, when interest is allowed, at what rate and from what date is wholly within the discretion of the court. *Thompson* v. *Trustees of Phillips Exeter Academy,* 105 N.H. 153, 159, 196 A.2d 42, 46 (1963); *Douglas* v. *Westfall,* 113 Cal. App. 2d 107, 113, 248 P.2d 68, 72 (1952); G. Bogert, Trusts & Trustees § 863 (rev. 2d ed. 1982). In this instance, the trial court refused to award interest, and absent evidence of an abuse of discretion, we will respect its decision.

*Affirmed.*