2009 VT 38

Scott Mann and the Estate of Nathan LaBrecque v. Adventure Quest, Inc., d/b/a The Academy at Adventure Quest, and Peter Drutchal, a/k/a Peter Kennedy, a/k/a Peter Drutchal-Kennedy and Virginia Surety Company, Inc. v. Adventure Quest, Inc., Peter Drutchal, Scott Mann, and the Estate of Nathan LaBrecque

[974 A.2d 607]

No. 07-443

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed April 24, 2009

*Charles L. Powell,* White River Junction, for Plaintiff-Appellant Mann.

*Frank H. Olmstead* of *DesMeules, Olmsted & Ostler, Norwich,* for Plaintiff-Appellant Estate of LaBrecque.

*Samuel Hoar, Jr.* of *Dinse, Knapp & McAndrew, P.C.,* Burlington, for Plaintiff/Intervenor-Appellee.

¶ 1. **Dooley, J.** Plaintiffs Scott Mann and the Estate of Nathan LaBrecque appeal from the Windsor Superior Court's grant of summary judgment to intervenor-insurer Virginia Surety Company, determining that insurer would not owe indemnification to Adventure Quest should it be found liable to plaintiffs for sexual abuse they experienced while attending Adventure Quest's school. On appeal, plaintiffs argue that insurer was not entitled to summary judgment because the superior court should not have imputed knowledge of the sexual abuse to Adventure Quest and because a material fact remained in dispute. We agree that a material fact remains in dispute and reverse and remand.

¶ 2. This suit arises out of the conduct of Peter Drutchal, the executive director of Adventure Quest. It is undisputed that he sexually abused both plaintiffs when they were minors and attended Adventure Quest. Plaintiffs sued Adventure Quest for negligence and breach of fiduciary duty.[1]

¶ 3. The superior court determined that the following facts are undisputed. Drutchal founded Adventure Quest in approximately 1989. At its inception, Adventure Quest's purpose was to be an outdoor summertime leadership camp for youth. In 1996, it became a school. At some point in the 1990's, Drutchal and his wife incorporated Adventure Quest as a nonprofit corporation. During the relevant period for this litigation, wife was the president and treasurer. Drutchal was initially the secretary and was a board member. Others joined the board, and at some point, Drutchal left the board. Until the fall of 1998, Adventure Quest's office was located in, and the corporate records were kept at, Drutchal's residence.

¶ 4. At all relevant times, Drutchal was the executive director of Adventure Quest and the only full-time, year-round employee. During the summers, Adventure Quest had additional part-time employees, who reported to Drutchal.

¶ 5. Adventure Quest had liability coverage with insurer for the relevant time. For the period June 12, 1994 to June 12, 1996, the policy included a "sexual abuse endorsement" that provided coverage for sexual abuse claims. This endorsement had an exclusion from the policy's general provisions as to who was insured. This exclusion provided:

---

[1] Plaintiffs also sued Drutchal. However, the insurance coverage dispute discussed in this opinion relates only to Adventure Quest.

Section II — WHO IS AN INSURED shall not include any person or entity that personally participated in committing any sexual abuse, sexual molestation, sexual exploitation, or sexual injury, or who failed to take action to prevent recurrence after having personal knowledge of any sexual abuse, sexual molestation, sexual exploitation, or sexual injury.

In the spring of 1994, Drutchal completed Adventure Quest's application materials for the insurance policy. He answered "no" in response to the question "[h]ave you ever had an incident which resulted in an allegation of sexual abuse?"

¶ 6. Drutchal's sexual abuse of plaintiffs began before, and continued during and after the insurance policy periods at issue here. For a period of years, Drutchal and plaintiffs kept the abuse secret from others; it did not come to light until approximately 2001. Drutchal's sexual abuse occurred in the course of school activities, while Drutchal was acting in his capacity as coach and chaperone. Drutchal's acts of sexual abuse were for his own purposes; the abuse was not done within the scope of his duties or authority as executive director, nor was it done in the best interests of Adventure Quest.

¶ 7. Insurer intervened in the case and sought a declaration that it was not required to indemnify Adventure Quest for any judgment obtained against it by plaintiffs. Insurer moved for summary judgment arguing that: (1) the terms of the exclusion disqualified Adventure Quest from coverage because it "personally participated" in committing the sexual abuse and it "failed to take action to prevent recurrence after having personal knowledge" of the abuse; and (2) even if it was insured under the endorsement, Adventure Quest made knowingly false statements in its policy application materials that preclude coverage.[2] Plaintiffs also moved for summary judgment, seeking a declaration that Adventure Quest is covered by the policy and insurer owes Adventure Quest a duty of indemnification in the event it is found liable to plaintiffs.

¶ 8. The superior court concluded that Adventure Quest is not disqualified from coverage on the ground that it personally

---

[2] The superior court also granted insurer's motion for summary judgment with respect to coverage for Drutchal's personal liability. Plaintiffs do not appeal the superior court's determination that Drutchal is not an insured under the policy.

participated in the abuse. However, the court granted summary judgment to insurer because Drutchal's knowledge of his own misconduct must be imputed to Adventure Quest, so that it can be said to have had "personal knowledge" of the abuse and to have "failed to take any action to prevent recurrence," thereby precluding coverage under the exclusion quoted above. In reaching this conclusion, the court applied the "sole representative" doctrine.

¶ 9. On appeal, plaintiffs argue that the superior court erred because: (1) the sole-representative doctrine is not the law in Vermont; (2) even if the sole-representative doctrine is the law in Vermont, the doctrine is inapplicable in this case because it does not apply to information obtained outside the course and scope of an employee's duties; and (3) even if the sole-representative doctrine is the law in Vermont and does apply to information obtained outside the course and scope of an employee's duties, summary judgment is not appropriate because there is a genuine issue of material fact — whether Drutchal was in fact Adventure Quest's sole representative. Insurer argues that the sole-representative doctrine is applicable and was correctly applied in this case. In the alternative, insurer argues that summary judgment is appropriate because for plaintiffs to have a cause of action, Adventure Quest must have known of the abuse, and if Adventure Quest knew of the abuse, there would be no insurance coverage.

¶ 10. We review summary judgment decisions de novo, applying the same standard of review as that applied by the trial court. *Peerless Ins. Co. v. Frederick*, 2004 VT 126, ¶ 10, 177 Vt. 441, 869 A.2d 112. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In applying this standard, we give the nonmoving party the benefit of all reasonable doubts and inferences. *Id.*

■ ■ ¶ 11. The parties and the superior court have looked at this case as one determined by agency law, with the decision turning on whether Drutchal's knowledge that he was sexually abusing plaintiffs should be imputed to Adventure Quest. Under agency law, the starting point is the general rule that any notice or knowledge received by an officer or agent authorized to receive the same is imputed to the corporation itself. *McGann v. Capital Sav. Bank & Trust Co.*, 117 Vt. 179, 183, 89 A.2d 123, 126 (1952);

see also *Roberts v. W. H. Hughes Co.*, 86 Vt. 76, 87, 83 A. 807, 812 (1912) (holding that notice to the president was notice to the corporation); accord *Porter v. Bank of Rutland*, 19 Vt. 410, 425 (1847), *disapproved on other grounds, O'Brien v. Holden*, 104 Vt. 338, 349, 160 A. 192, 196 (1932). We have also recognized an exception to the rule — notice or knowledge received by the agent outside the scope of the agent's authority is not imputed to the principal. *Estate of Sawyer v. Crowell*, 151 Vt. 287, 292, 559 A.2d 687, 691 (1989). At least in a case like this, these rules are consistent with those of the Restatement (Third) of Agency § 5.02(1) (2006) (notice to an agent is notice to a principal if "the agent has actual or apparent authority to receive the notification").[3]

■ ¶ 12. The exception for information received outside of the scope of the agent's authority is often stated in terms of the adversity of the agent's interest. When an agent's interests in the subject matter are so adverse as to practically destroy the agency relationship, there is no imputation of knowledge to the principal. This is the adverse-interest exception. 3 W. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 819, at 104-08 (2002); see Restatement (Third) of Agency § 5.04 (notice is not imputed "if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person"). Whether viewed in relation to the scope of authority or the adversity of interests, these exceptions are generally the same because of the agent's duty of loyalty to the principal. An agent breaches a duty of loyalty if the agent uses the agency "for the benefit of the agent himself." *John A. Westlund, Inc. v. O'Bryan Constr. Co.*, 123 Vt. 301, 308, 187 A.2d 507, 513 (1963); see also *In re Estate of Kurrelmeyer*, 2006 VT 19, ¶ 17, 179 Vt. 359, 895 A.2d 207 (agent's duty of loyalty prohibits agent from using agency for own benefit). The agent must "subordinate the agent's interests to those of the principal and place the principal's interests first as to matters connected

---

[3] We have not explicitly adopted provisions of the Restatement (Third) of Agency in any prior case. In this case, we have cited it because it is the latest statement on some of the issues before us. In fact, it would make no difference in this case if we referenced Restatement (Second) of Agency, which we have followed in numerous cases in the past. See *Doe v. Forrest*, 2004 VT 37, ¶ 21, 176 Vt. 476, 853 A.2d 48 ("We have routinely adopted provisions of the Restatement (Second) of Agency as reflecting the common law of Vermont.").

with the agency relationship." Restatement (Third) of Agency § 8.01 cmt. b.

¶ 13. It is clear that Drutchal acted inconsistently with his duty of loyalty to Adventure Quest in this case. The sexual assaults on a customer of Adventure Quest, if discovered, could destroy Adventure Quest's ability to function. We think it is also clear that Drutchal acted adversely to Adventure Quest even though his intent was not to injure Adventure Quest, but instead to satisfy his own sexual desires. See *id.* § 5.04 cmt. c (noting that in many cases, the determination of whether the agent acted adversely can be made based on the motive of the agent); Restatement (Second) of Agency § 282(1) (1958) (principal is not bound by knowledge of the agent if "the agent secretly is acting adversely to the principal and entirely for his own or another's purposes").

¶ 14. A number of jurisdictions have recognized an exception to the adverse-interest exception: when an adverse agent is the sole representative of the principal, the principal may once again be charged with the agent's knowledge. This is the sole-representative doctrine. Fletcher, *supra*, § 827, at 139. Although Adventure Quest urges that we not adopt this doctrine, we can find no jurisdiction that has refused to adopt it, at least in modern times. See generally Annotation, *Sole Actor Doctrine where Officer or Agent of Corporation Acting Adversely to Its Sole Representative in the Transaction*, 111 A.L.R. 665 (1937 and Supp. 2009) (noting that the "exception has been frequently applied" and that a "great weight of authority supports the . . . doctrine"). The commonly stated rationale for the rule is that with respect to a sole representative "there is no one to whom to impart his or her knowledge and no one from whom he or she may conceal it." Fletcher, *supra*, § 827.10, at 143. In general, this is another way of stating that the agent is de facto the principal. See *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 165 (2d Cir. 2003) (when agent is the sole representative, "principal and agent are one and the same"). We adopt the sole-representative doctrine as applied in the following discussion.

¶ 15. The sole-representative doctrine is typically applied in two different scenarios. See Fletcher, *supra*, § 827; *First Nat'l Bank of Cicero v. Lewco Sec. Corp.*, 860 F.2d 1407, 1418 (7th Cir.

1988). First, it is applied when an agent controls and dominates the corporation. See *Grassmueck v. Am. Shorthorn Ass'n,* 402 F.3d 833, 841 (8th Cir. 2005) ("The central inquiry in the sole actor context is whether the agent committing fraud is also the principal that should have been informed."); *Official Comm. of Unsecured Creditors of Color Tile, Inc.,* 322 F.3d at 165 (applying sole-representative doctrine to impute knowledge from members of the board of directors to the corporation because the "principal and agent are one and the same" as these persons dominated and controlled the corporation); *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,* 381 F.2d 245, 250 (4th Cir. 1967) (stating that corporate officers' knowledge could be imputed to the corporation only if the undisputed facts showed the officers actually controlled the corporation); *Waslow v. Grant Thornton L.L.P. (In re Jack Greenberg, Inc.),* 212 B.R. 76, 87 (Bankr. E.D. Pa. 1997) (refusing to apply sole-representative doctrine where court could not conclude that the vice-president and significant shareholder was the sole actor because there was no allegation that he was the sole shareholder, or that he dominated or controlled the corporation); *FDIC v. Nat'l Surety Corp.,* 281 N.W.2d 816, 821 (Iowa 1979) (refusing to apply sole-representative doctrine when the court found "no basis . . . for holding that the board of directors of the bank abdicated its responsibility to [the bank president] or that it was entirely subject to his control"); *Demoulas v. Demoulas,* 703 N.E.2d 1149, 1171-72 (Mass. 1998) (imputing knowledge of agent who had 100% control of the corporation as the sole voting trustee); see also *Tolz v. Proskauer Rose, LLP (In re Fuzion Techs. Group, Inc.),* 332 B.R. 225, 239 (Bankr. S.D. Fla. 2005) (prohibiting imputation under the sole-representative doctrine "if there was at least one honest officer, director, shareholder, or other insider who would have taken appropriate action to rectify the wrongdoing"). This is the application that is consistent with the rationale stated above.

¶ 16. In this case, the relevant evidence is very sparse, consisting of Drutchal's deposition and affidavits from persons who were members of Adventure Quest's board of directors. The deposition indicates that when Adventure Quest was formed as a corporation, there were no members and Drutchal and his wife were the only directors and officers, with wife serving as president. Around the period for which insurer provided the sexual abuse coverage, the board was expanded and Drutchal left the board. Although as

executive director Drutchal had no supervisor, under Vermont law, all corporate powers of a nonprofit corporation are exercised "by or under the authority of . . . its board [of directors]" and "the affairs of the corporation [are] managed under the direction" of the board. 11B V.S.A. § 8.01(b).[4] Drutchal acknowledged that once there was a full board of directors, "the executive director falls under the board of directors." One affiant indicated that he served on the board from 1994 or 1995 and that the board "dealt with a broad range of issues including fund raising, admissions, the school, and teachers." That affiant said that Drutchal was not a member of the board and that there were issues for which Drutchal excused himself from board meetings. Another affiant indicated he was a member of the board when "the [b]oard first began taking an active role in 1993 or 1994."

■ ■ ¶ 17. Insurer bore the burden of showing that the claim against it was excluded by the policy language. *Agency of Natural Res. v. United States Fire Ins. Co.*, 173 Vt. 302, 308, 796 A.2d 476, 480 (2001). We cannot, however, determine from this record whether Drutchal controlled and dominated Adventure Quest. There are clearly disputed questions of material fact that prevent the grant of summary judgment. Although we agree with insurer that the question of whether Drutchal was the sole representative of Adventure Quest cannot be determined solely from the official roles and responsibilities of the actors in the corporation, these official roles and responsibilities are relevant, and we have virtually no evidence of the actual governance of Adventure Quest. The superior court erred in granting summary judgment to insurer.

■ ¶ 18. There is another consideration that supports our conclusion. The insurance policy exclusion insurer seeks to apply is invoked only if Adventure Quest has "personal knowledge of any sexual abuse, sexual molestation, sexual exploitation, or sexual injury." Although we generally view this case as turning on agency principles, the policy language does not necessarily adopt these principles. Thus, insurer argues that "personal knowledge" means imputed knowledge under agency law, but the use of the word "personal" suggests a more rigorous standard. Our duty is to

---

[4] The current nonprofit corporation law was effective January 1, 1997 and applies to all preexisting corporations. See 11B V.S.A. § 17.01. The provisions of the prior law, adopted in 1972, are similar. See 1971, No. 237 (Adj. Sess.), § 17 ("The affairs of a corporation shall be managed by a board of directors.").

24

construe the policy as it is written and not to rewrite it using language we can more easily construe. See *City of Burlington v. Associated Elec. & Gas Ins. Servs., Ltd.*, 164 Vt. 218, 222, 669 A.2d 1181, 1183 (1995).

■ ¶ 19. The Restatement (Third) of Agency § 5.03 comment (d)(7) addresses the situation where the substantive law requires personal knowledge to impose liability, and suggests that we look to the criminal law to define the personal knowledge that is sufficient to convict a corporation based on the conduct of its stockholders, directors, officers, or managers. Although we have not defined the criminal liability of a corporation for such acts, our decisions on civil liability suggest a very narrow responsibility. Thus, in *Doe v. Newberry Bible Church*, 2007 VT 72, ¶ 13, 182 Vt. 174, 933 A.2d 196, we held that a nonprofit corporation which runs a church cannot be liable for the pastor's sexual assaults on children attending the church and its school. The church situation is similar to that present here, at least on the current state of the record. If we imputed the knowledge of the pastor to the church in such an instance, we would be again opening the door to liability because the church did not act to prevent the assaults. Thus, for consistency in our law, and in implementing the sole-representative standard, it is important that we not broadly allow imputation of knowledge of misconduct through a sole-representative doctrine. We view the very limited language regarding the requisite knowledge in the insurance policy at issue here as addressing that concern.

■ ¶ 20. As an alternative to justify the grant of summary judgment, insurer argues that we must apply the second form of the sole-representative doctrine — that is, when one person acts as the only agent representing the principal's interest in a particular transaction. See, e.g., *Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215, 222 (1923). In fact, the superior court may have applied this form of the doctrine, as it noted that Drutchal was Adventure Quest's "sole representative for many of its activities, including (1) supervising children and (2) obtaining insurance." The court found that the events in this case involved supervision of children and purchase of insurance to cover liability for improper sexual activity with children; thus, the court concluded "it is only fair to charge Adventure Quest with the knowledge that Peter Drutchal had about his own misconduct with

the children, at least as of the time when he purchased insurance coverage for the organization." The argument, then, is that Drutchal does not have to control or dominate Adventure Quest as to all its affairs, but only with respect to the "transaction" involved in the case. We assume that we would accept this form of the sole-representative doctrine in the appropriate case. This is not an appropriate case.

¶ 21. As the United States Supreme Court noted in *Curtis, Collins & Holbrook Co.*, "if the Company insists on retaining the fruits of that adventure, it must be charged with the knowledge of the agent through whom the fruits came." *Id.* at 224. The superior court in this case recognized this rationale for the doctrine, stating that "[i]t is fair to charge a principal with the knowledge of its agent, if the principal seeks to retain a benefit that the agent has procured for the principal." As one commentator noted, "the rule merely applies principles of estoppel, ratification or restitution in cases involving claims to property." M. Dore, *Presumed Innocent? Financial Institutions, Professional Malpractice Claims, and Defenses Based on Management Misconduct*, 1995 Colum. Bus. L. Rev. 127, 165 (1995). The Supreme Judicial Court of Massachusetts summarized that "where one undertakes to profit by the act of another as agent, he must adopt that act as a whole and take the bitter with the sweet. One cannot take the gains of a fraud without also bearing its burdens." *Tremont Trust Co. v. Noyes*, 141 N.E. 93, 98 (Mass. 1923).

¶ 22. It appears that the superior court used the transaction form of the sole-representative doctrine with the understanding that the relevant transaction was the purchase of insurance for Adventure Quest. At the same time, the court held that it was not clear that Drutchal made any material misstatements in the insurance policy application because no allegations of sexual abuse had resulted from his sexual misconduct. Thus, the superior court concluded, there was no fraud on insurer, and Drutchal's misconduct arose with respect to his supervision of children, and not his purchase of insurance. However, the insurance purchase could have been done by anyone affiliated with Adventure Quest, and the application would have had the same content whoever prepared it. In this case, Adventure Quest is not taking the benefit of a fraud and refusing to accept its burdens. Indeed, the "transaction" here, if that word is applicable, is the contractual

relationship between Adventure Quest and plaintiffs for their enrollment in the school. The second form of the sole-representative doctrine does not apply here; the superior court erred in relying upon it.

¶ 23. Finally, in the nature of a cross-appeal, the insurer has urged us to affirm the grant of summary judgment on a theory not adopted by the superior court — that plaintiffs can prevail against Adventure Quest in their suit only if they can show that Adventure Quest actually knew of Drutchal's abuse and failed to take action to prevent it. As a result, insurer argues that irrespective of imputation, plaintiffs must show Adventure Quest's knowledge and knowledge necessarily brings into play the policy exclusion language discussed above.

■■ ¶ 24. We reject this argument. To prevail on a negligence or breach of fiduciary duty claim, plaintiffs must prove that Adventure Quest knew or should have known of the abuse. See Restatement (Second) of Torts §§ 308, 320 (1965) (providing that negligence results only when actor "knows or should know" of risk).[5] Actual knowledge of a particular risk is not a required element. See *Thompson v. Green Mountain Power Corp.*, 120 Vt. 478, 483, 144 A.2d 786, 789 (1958) ("Knowledge essential to the invocation of legal duty need not be actual; it may be implied, imputed and constructed from the circumstances.").

■■ ■■ ¶ 25. As we discussed above, there is no coverage under the insurance policy if Adventure Quest had "personal knowledge" of the abuse. See *Agency of Natural Res.*, 173 Vt. at 308, 796 A.2d at 480 (policy must be construed according to its terms and the intent as expressed in the policy language). Under any ordinary meaning of the language, the "should have known" threshold for imposing liability is not the same as "personal knowledge." See, e.g., *Nemmers v. United States*, 795 F.2d 628, 631 (7th Cir. 1986) (defining personal knowledge as actual knowledge and distinguishing personal knowledge from what should have been known); see also Black's Law Dictionary 888 (8th ed. 2004) (defining personal knowledge as "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what

---

[5] Insurer asserts that plaintiffs' causes of action can only be maintained under the cited Restatement sections. We cite to these sections only to demonstrate the error of insurer's argument and not to express any opinion on the proper characterization of plaintiffs' claims.

someone else has said"). Thus, plaintiffs can pursue a claim against Adventure Quest that does not require personal knowledge and that insurer would be required to indemnify. We reject insurer's alternative ground for affirming the trial court's summary judgment.

*Reversed and remanded.*