**Gary H. SCHALL, Guardian of Henriette Gilbert and Daniel T. Monte, Executor of Estate of Eustache Gilbert v. James GILBERT, Northfield Savings Bank and Wells River Savings Bank**

[741 A.2d 286]

No. 98-316

August 3, 1999. Plaintiffs Gary H. Schall, guardian of Henriette Gilbert, and Daniel Monte, executor of the estate of Eustache Gilbert, appeal from the superior court's summary judgment decision concluding that the statute of limitations pursuant to 9A V.S.A. § 4-111 barred their claim against defendant Northfield Savings Bank (NSB). Plaintiffs also seek interlocutory review of the trial court's ruling on the applicable statute of limitations and the validity of the two powers of attorney related to their claim against

Wells River Savings Bank (WRSB). We affirm.

Defendant James Gilbert is the nephew of Eustache and Henriette Gilbert (Gilberts). On January 25, 1993, the Gilberts each executed a power of attorney naming James Gilbert as their attorney in fact. On this same date, the Gilberts accompanied their nephew to a NSB branch where they personally signed withdrawal requests to close out two certificates of deposit and a joint savings account.

On April 15, 1993, James Gilbert visited a WRSB branch with Samuel Palmisano. There, they presented powers of attorney previously executed by the Gilberts and asked to close out two certificates of deposit. Due to the large dollar amount of the transaction, a WRSB employee consulted with a supervisor who eventually contacted a WRSB attorney. The bank then rejected the powers of attorney because they did not contain a "durable" clause necessary for. James Gilbert to exercise his authority in the event that one or both of the Gilberts suffered from a mental disability. The powers of attorney were amended to include the clause and again presented to WRSB the same day. The bank closed out both certificates of deposit pursuant to the amended powers of attorney executed by the Gilberts. James Gilbert, on behalf of the Gilberts, signed the withdrawal requests and transferred the funds into a money market account held in his own name as attorney-in-fact.

James Gilbert allegedly turned all the withdrawn funds over to Joseph C. Palmisano, Samuel Palmisano's father, who invested and lost them. Plaintiffs brought suit against NSB, WRSB, and James Gilbert. Plaintiffs seek the monies withdrawn from both banks, alleging that the banks breached their duty of care concerning their dealings with the elderly Gilberts. The superior court granted NSB's motion for summary judgment,

concluding that plaintiffs' claim was filed subsequent to the three-year statute of limitations under 9A V.S.A. § 4-111. In denying WRSB's motion for summary judgment, the superior court concluded that there was a genuine issue of material fact as to when the Gilberts knew or should have known of WRSB's alleged negligence. The superior court also denied plaintiffs' motion for summary judgment against WRSB, stating that the clear and unambiguous language in the powers of attorney authorized James Gilbert to withdraw the funds. This appeal followed.

We first address whether an action involving certificates of deposit falls under article three or four of the Vermont Uniform Commercial Code (UCC). The superior court concluded that article four, which concerns bank deposits and collections, applied. See Official Comment 3, 9A V.S.A. § 4-101. Plaintiffs argue that either article three of Vermont's UCC or 12 V.S.A. § 511 governs the matter. While we agree with the superior court's ultimate conclusion, we do not agree that article four of Vermont's UCC governs this action. Article three governs negotiable instruments, and certificates of deposit are negotiable instruments under 9A V.S.A. § 3-104(j). See *Miller v. Merchants Bank*, 138 Vt. 235, 238, 415 A.2d 196, 198 (1980). To be a negotiable instrument within article three, a writing must: (1) be payable to the bearer at the time it is issued; (2) be payable on demand or at a separate time; and (3) not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. See 9A V.S.A. § 3-104(a)(1)-(3). The certificates of deposit at issue in this case indicate they are payable to Eustache Gilbert and Henriette Gilbert as bearers of the instrument. They also state that the entire balance is payable at maturity in sixty months with the option of early withdrawal. The certificates of deposit in

the instant case satisfy the final criteria defining a negotiable instrument because they state no other undertaking for the issuing bank aside from making payment upon orders. For these reasons, we conclude that this action falls under article three of Vermont's UCC.

Next we address what statute of limitations governs the current action. Although we agree with plaintiffs that this action falls under article three of Vermont's UCC, we do not agree that the particular provision under 9A V.S.A. § 3-118(e) upon which plaintiffs rely is applicable. It states that:

> An action to enforce the obligation of a party to a certificate of deposit to pay the instrument must be commenced within six years after demand for payment is made to the maker, but if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed.

The current action is not one to enforce either bank to pay out certificates of deposit. Plaintiffs do not allege that the banks neglected their duty to pay the instruments. Indeed, plaintiffs recognize that the certificates of deposit were paid upon request for withdrawal and presentation of the powers of attorney. Thus, 9A V.S.A. § 3-118(e) does not govern.

Plaintiffs' action against NSB and WRSB is based upon a negligence claim. They allege that both banks failed to notice "signs and signals" which led to the demise of the Gilberts' assets. In effect, they argue that both banks breached their duty to safeguard the Gilberts' money, not their duty to pay it. Thus, we conclude that the appropriate statute of limitations is § 3-118(g), which governs actions to enforce a duty arising under article three. See 9A V.S.A. § 3-118(g).

This subsection states that, "[u]nless governed by other law regarding claims for indemnity or contribution, an action . . . to enforce an obligation, *duty*, or right arising under this article and not governed by this section must be commenced within three years after the [cause of action] accrues." *Id.* (emphasis added; alteration in original).

Plaintiffs alternatively advance the theory that the statute of limitations for general civil actions applies to this case. See 12 V.S.A. § 511. Section 511 states in pertinent part that a "civil action . . . except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter." *Id.* Since we have already determined that the action is governed by article three of the Vermont UCC, plaintiffs' action is thus "otherwise provided" and therefore not subject to 12 V.S.A. § 511.

Having determined that a three-year statute of limitations pertains to this action, we now consider when it commences. As for the claim against NSB, the Gilberts were present and signed withdrawal requests at NSB on January 25, 1993. The plaintiffs have adduced no facts tending to show that the Gilberts knew or should have known of NSB's alleged wrongdoing on a date other than January 25, 1993. As a result, the action against NSB accrued on January 25, 1993, and was time-barred when brought in July of 1997. Any cause of action related to NSB arose and then expired long before the complaint in this matter was filed.

Similarly, the three-year statute of limitations under 9A V.S.A. § 3-118(g) pertains to the claims against WRSB. The date of the alleged wrongdoing by WRSB, however, is not as certain. The Gilberts were not present on April 15, 1993, when the funds were withdrawn from WRSB. The trial court correctly held that further factual development is required to determine when the three-year statute of limitation commences.

Finally, plaintiffs argue that the powers of attorney did not authorize James Gilbert to withdraw funds at WRSB. They characterize the powers of attorney as granting James Gilbert a special rather then a general agency. A power of attorney is a written authorization used to evidence an agent's authority to act on behalf of another person. See *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 454 (Del. 1982). It is often characterized as general or special. The more specific a power of attorney is concerning performance of individual acts, the more the agent is restricted from executing acts beyond the specific authority granted. See *Butler v. Maples*, 76 U.S. 766, 774 (9 Wall. 1869). Further, the Restatement (Second) of Agency § 3 cmt. a (1958) states:

> In determining whether an agent is a general agent or a special agent, the number of acts to be performed in accomplishing an authorized result, the number of people to be dealt with, and the length of time needed to accomplish the result are the important considerations. Continuity of service rather than the extent of discretion or responsibility is the hallmark of the general agent.

In this instance, the powers of attorney authorized the Gilberts' nephew to transact all business concerning real and personal property. They also allow him:

> To make, execute and acknowledge all contracts, orders, deeds, leases, writings, assurances, and instruments which may be requisite or proper to effectuate any matters or things pertaining or belonging to me, including drawing checks against my account for all or any part, now or hereafter deposited, or money standing to my credit on the books . . . .

The powers of attorney are broadly drawn, permitting James Gilbert to perform a variety of general acts. They entrust him to make real estate decisions, engage in a variety of contracts and draw funds against the Gilberts' account. The powers of attorney do not expressly grant James Gilbert the authority to close out certificates of deposit. The language in these documents, however, clearly and unambiguously designates a general agency. Therefore, we conclude that the powers of attorney conferred the authority upon James Gilbert to withdraw the certificates of deposit held by WRSB.

*Affirmed.*