No. 99-454

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 190

300 Mont. 418

8 P.3d 83

IN THE MATTER OF THE TRUST OF

LILLIAN P. JAMEISON

MARGARET SCHMIDT,

Petitioner and Respondent,

v.

ARLYSS BOLICH,

Respondent and Appellant,

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brian L. Delaney; Mulroney, Delaney & Scott, Missoula, Montana

For Respondent:

Harry Haines, Gail M. Haviland; Worden, Thane & Haines, Missoula,

Montana

Submitted on Briefs: November 4, 1999

Decided: July 18, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Arlyss Bolich (Bolich) appeals from the Opinion and Order entered by the Fourth Judicial District Court, Missoula County, granting the motion for summary judgment filed by Margaret Schmidt (Schmidt), terminating the Lillian P. Jameison Revocable Trust (Jameison Trust) and ordering distribution of the trust estate pursuant to the laws of intestacy. We affirm.

¶2 The sole issue on appeal is whether the District Court erred in granting summary judgment to Schmidt, declaring the Jameison Trust invalid and terminating it.

*BACKGROUND*

¶3 On January 16, 1986, Lillian P. Jameison (Jameison) executed a Power of Attorney appointing Bolich, her granddaughter, as her "true and lawful attorney." The Power of Attorney authorized Bolich to act on Jameison's behalf

to receive and receipt for any and all sums of money or payments due or to become due to me, to deposit in my name in any bank or banks any and all moneys collected or received by him (her), to pay any and all bills, accounts, claims and demands now or hereafter payable by me, to draw checks or drafts upon any and all bank accounts or deposits belonging to me, to act for me in any business in which I am now or have been engaged or interested, and generally to do and perform all matters and things, transact all business, make, execute and acknowledge all contracts, orders, deeds, writings, assurances, and instruments which may be requisite or proper to effectuate any matter or thing appertaining or belonging to me, and generally to act for me in all matters affecting my

business or property, with the same force and effect to all intents and purposes as though I were personally present and acting for myself hereby ratifying and confirming whatsoever my said attorney shall do by authority hereof.

¶4 On April 28, 1987, Bolich executed as attorney-in-fact for Jameison, as trustor, a Trust Agreement which, on its face, created the Jameison Trust. The Trust Agreement designated Bolich the trustee and she also signed it in that capacity. It named Jameison the income beneficiary for life and Jameison's daughters, Schmidt and M. Jo Stiter (Stiter), income beneficiaries during their lives in the event they survived her. The Trust Agreement also provided for distribution of the trust principal for the health, maintenance, and welfare of the income beneficiaries at the trustee's discretion. Finally, on the death of the last income beneficiary, the trust was to dissolve with the remainder being distributed to Bolich or her estate. Again signing as Jameison's attorney-in-fact, Bolich conveyed all of Jameison's real property--in excess of 30 parcels--and all of Jameison's personal property--including several certificates of deposit and promissory notes--to herself, as trustee of the Jameison Trust.

¶5 Jameison died on June 14, 1987. Stiter died on February 25, 1990. In August and September of 1994, Bolich distributed a total of $100 in income from the Jameison Trust to Schmidt.

¶6 In October of 1994, Schmidt's attorney wrote a letter to Bolich requesting accountings for the trust. Bolich provided several documents, none of which satisfied Schmidt as an accounting. In October of 1995, Schmidt engaged another attorney who wrote to Bolich's counsel requesting an accounting for each year of the trust's existence. Bolich apparently failed to provide Schmidt with the requested accountings.

¶7 On February 2, 1996, Schmidt petitioned the District Court to appoint a temporary trustee and require accountings. She also requested an order determining the validity or invalidity of the Trust Agreement. Schmidt alleged that there was no evidence of intent by Jameison to create the Jameison Trust and, as a result, the Jameison Trust should be declared invalid and the trust estate distributed pursuant to intestacy laws. In the event the District Court determined the Jameison Trust to be valid, Schmidt sought Bolich's removal as trustee.

¶8 Bolich filed an answer and counterpetition. Bolich denied Schmidt's allegations regarding the invalidity of the Jameison Trust. She affirmatively asserted that the Power of Attorney specifically empowered her to create the Jameison Trust and that the Power of

Attorney, the Trust Agreement and the conveyance documents were all completed pursuant to Jameison's specific direction. She also affirmatively alleged that ample evidence exists and would be produced to demonstrate Jameison's intent. Bolich further urged that, in the event the Jameison Trust was invalid, the court should distribute the trust estate pursuant to Jameison's last will and testament which, as alleged on information and belief, made no provision for Schmidt. Schmidt requested a copy of the referenced last will and testament and, when Bolich failed to produce it, moved the District Court for an order to produce. The court granted Schmidt's motion and, when Bolich failed to produce the last will and testament, struck Bolich's counterpetition and determined that Jameison had died intestate.

¶9 On October 15, 1997, Schmidt moved for summary judgment on the grounds that Bolich did not have the specific power of attorney required to create the Jameison Trust and there was no evidence of Jameison's intent to create the Jameison Trust since the Trust Agreement and the conveyance documents were signed solely by Bolich and not by Jameison. The District Court denied Schmidt's motion on the basis that genuine issues of material fact existed regarding whether Jameison intended to create the Jameison Trust and authorized Bolich to do so on her behalf, and that Bolich should have an opportunity to present evidence.

¶10 Schmidt deposed Bolich and renewed her motion for summary judgment. After full briefing, the District Court issued its Opinion and Order. The court observed that the case had not progressed substantially since its ruling on Schmidt's original motion for summary judgment. It determined that Schmidt had satisfied her burden of establishing the absence of genuine issues of material fact, Bolich's assertions regarding Jameison's intent were purely speculative and Bolich had failed to produce any evidence substantiating her claim that Jameison intended to create the trust. Concluding the general power of attorney did not specifically authorize Bolich to create the trust and she exceeded her authority in doing so, the court invalidated the Jameison Trust. Finally, the District Court ordered the Jameison Trust terminated and the proceeds distributed pursuant to the laws of intestacy. Bolich appeals.

## STANDARD OF REVIEW

¶11 We review a district court's ruling on a motion for summary judgment *de novo*, using the same Rule 56(c), M.R.Civ.P., criteria applied by the district court. *Matter of Estate of Bolinger* (1997), 284 Mont. 114, 117, 943 P.2d 981, 983 (citation omitted). Under Rule 56

(c), M.R.Civ.P., summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. We review a district court's conclusions of law to determine if the court's interpretation of the law is correct. *Estate of Bolinger*, 284 Mont. at 118, 943 P.2d at 983 (citation omitted).

## *DISCUSSION*

**¶12 Did the District Court err in granting summary judgment to Schmidt, declaring the Jameison Trust invalid and terminating it?**

¶13 The case before us involves the law of trusts and the law of agency. Both are largely matters of statute in Montana.

¶14 Subject to other statutory provisions, a trust may be created by

(1) a declaration by the owner of property that the owner holds the property as trustee;

(2) a transfer of property by the owner during the owner's lifetime to another person as trustee;

(3) a testamentary transfer of property by the owner to another person as trustee;

(4) an exercise of a power of appointment to another person as trustee; or

(5) an enforceable promise to create a trust.

Section 72-33-201, MCA. In addition, a trust is created only if "the trustor properly manifests an intention to create a trust," "there is trust property" and "there is a beneficiary." Sections 72-33-202, 72-33-203 and 72-33-206, MCA. Finally, while a trust may become valid by operation of law in some circumstances, trusts generally are not valid--even where created as required by statute--unless evidenced

(1) by a written instrument signed by the trustee, or by the trustee's agent if authorized in writing to do so; [or]

(2) by a written instrument signed by the trustor, or by the trustor's agent if authorized in writing to do so[.]

Section 72-33-208, MCA.

¶15 An agent--including an attorney-in-fact--is one who represents another, called the principal, in dealings with third persons. Sections 72-1-103(1) and 28-10-101, MCA. An agent may be authorized to do any acts the principal might do, except those to which the principal must give his or her personal attention. Section 28-10-105, MCA. Moreover, the authority for an agent to enter into a contract required by law to be in writing can be given only by an instrument in writing. *See* § 28-10-203, MCA.

¶16 Here, Bolich first asserts that she executed the Jameison Trust Agreement as Jameison's attorney-in-fact under the Power of Attorney Jameison granted her in 1986. As a result, she contends that the Trust Agreement meets the § 72-33-208(2), MCA, requirement that the trust be evidenced by a written instrument signed by herself as Jameison's agent under the written authority contained in the Power of Attorney. Her analysis is flawed.

¶17 As outlined above, the Legislature provided separately within the law of trusts for creating a trust and making a trust valid. Thus, we first consider whether the Jameison Trust was properly created because, if not, questions regarding validity under § 72-33-208, MCA, do not arise.

¶18 Reviewing the means of creating a trust set forth in § 72-33-201, MCA, it is clear that only the method set forth in subsection (2), which requires the property owner to transfer the property to another person as trustee during the owner's lifetime, is applicable here in determining whether the Jameison Trust was properly created. Jameison, as the owner, did not personally transfer her real or personal property to Bolich, as trustee. She did so, if at all, through Bolich's act of executing the conveyance documents as Jameison's attorney-in-fact under the Power of Attorney. Therefore, we must determine whether the Power of Attorney authorized Bolich to convey Jameison's property to herself as trustee.

¶19 Powers of attorney generally are construed by the rules governing the interpretation of written instruments. *McLaren Gold Mines Co. v. Morton* (1950), 124 Mont. 382, 390, 224 P.2d 975, 979. These rules require that, when possible, the parties' intent with regard to the authority granted be ascertained from the writing alone. *McLaren Gold Mines*, 124 Mont. at 390, 224 P.2d at 979. In doing so, "[t]he words used in the writing are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning,

unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." *McLaren Gold Mines*, 124 Mont. at 390, 224 P.2d at 979. In addition, "[w]here power is conferred on an agent by a power of attorney, the meaning of general words in the instrument is restricted by the context and construed accordingly and the authority given is construed strictly, so as to exclude the exercise of any power that is not warranted either by the terms actually used or as a necessary means of executing with effect the authority given." 3 Am. Jur. 2d *Agency* § 32 (1986); *see also In re Nix's Estate* (1923), 66 Mont. 559, 565-66, 213 P. 1089, 1091 (citations omitted).

¶19 In *McLaren Gold Mines*, we observed that the power of attorney at issue manifested the principal's specific intent--to operate, acquire and dispose of his mines and mining properties through his attorney-in-fact. *McLaren Gold Mines*, 124 Mont. at 391, 224 P.2d at 980. Considering that power of attorney in the context of the practices of the mining industry, we determined the power of attorney granted the attorney-in-fact the authority to grant an option to purchase within the powers to sell or lease a mine. *See McLaren Gold Mines*, 124 Mont. at 392, 224 P.2d at 980.

¶20 The Power of Attorney in the present case differs significantly from that in *McLaren Gold Mines*. Indeed, Bolich does not dispute that the Power of Attorney Jameison granted her is a "general" power of attorney. It grants her broad, but general, powers to act for Jameison in all matters affecting Jameison's business or property, including such powers as acting on Jameison's behalf in all past or current business, and executing and acknowledging contracts, deeds and writings. The Power of Attorney does not specifically grant the authority to create a trust, reflect Jameison's intent to create a trust, or even mention a trust. Therefore, Bolich's transfer of Jameison's property to herself as trustee for purposes of creating a trust pursuant to § 72-33-201(2), MCA, is not warranted by the terms actually used in the Power of Attorney or as a necessary means of executing other authority. We conclude, therefore, that the Power of Attorney does not authorize Bolich to transfer Jameison's property to herself as trustee and, as a result, the Jameison Trust was not properly created.

¶21 Bolich argues that a genuine issue of material fact exists regarding Jameison's intent to create the Jameison Trust. Therefore, according to Bolich, summary judgment was improper.

¶22 The record before us is clear that Jameison's intent with respect to the creation of the

Jameison Trust is in dispute. Her intent is not, however, an issue of material fact. "Material issues of fact are identified by looking to the substantive law governing the proceeding." *Matter of Estate of Lien* (1995), 270 Mont. 295, 299, 892 P.2d 530, 532 (citation omitted).

¶23 As discussed above, several criteria are necessary for the creation of a trust. One, as Bolich correctly contends, is that "the trustor properly manifests an intention to create a trust." Section 72-33-202, MCA. However, the "transfer of property by the owner during the owner's lifetime to another person as trustee" is an additional, separate requirement for the creation of a trust. Section 72-33-201(2), MCA. We concluded above that Bolich lacked authority to transfer Jameison's property to herself as trustee and, therefore, the Jameison Trust was not created by one of the methods set forth in § 72-33-201, MCA. As a consequence, a factual dispute regarding an additional requirement for creating the Jameison Trust--namely, whether Jameison properly manifested an intention to do so--is not an issue of material fact in this case.

¶24 Bolich's other contentions require little discussion. She argues that the Jameison Trust is valid under subsection (1) of § 72-33-208, MCA, because it was evidenced by a written instrument which she signed as trustee, and under subsection (2) of § 72-33-208, MCA, because it was evidenced by a written instrument she signed as Jameison's agent under the written authority granted her in the Power of Attorney. As discussed above, however, § 72-33-208, MCA, assumes the proper creation of a trust and adds a requirement to render the trust valid. Having concluded above that the Jameison Trust was not properly created in the first instance, it cannot be made valid by meeting the requirements of § 72-33-208, MCA. A mere signature on a written instrument cannot breathe life into a nonexistent trust.

¶25 Finally, Bolich argues that, even if she exceeded her authority under the Power of Attorney, Jameison ratified her act of executing the Jameison Trust Agreement by accepting the benefit of the Jameison Trust. This argument also fails, because § 28-10-211, MCA, permits ratification "only in the manner that would have been necessary to confer an original authority for the act ratified or, whenever an oral authorization would suffice, by knowingly accepting or retaining the benefit of the act." Trusts ordinarily are required to be evidenced by a writing. Section 72-33-208, MCA. Thus, § 28-10-211, MCA, requires that any ratification by Jameison of Bolich's act of executing the Jameison Trust Agreement must be in writing. Consequently, since oral authorization of Bolich's actions in executing the Trust Agreement would not suffice, ratification cannot be accomplished under § 28-10-211, MCA, by Jameison knowingly accepting the benefits of

the Jameison Trust.

¶26 We hold that the District Court correctly concluded that Bolich exceeded her authority in creating the trust. As a result, we further hold that the court did not err in granting summary judgment to Schmidt, declaring the Jameison Trust invalid and terminating it.

¶27 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.