2006 VT 19

# In re Estate of Louis H. Kurrelmeyer

[895 A.2d 207]

No. 04-347

Present: **Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Burgess, D.J., Specially Assigned**

Opinion Filed March 3, 2006

*Karl W. Neuse* of *Neuse, Smith & Venman, P.C.*, Middlebury, for Plaintiffs-Appellees Ellen L. Kurrelmeyer and Ellen L. Kurrelmeyer, Executrix of the Estate of Nancy Kurrelmeyer.

*James W. Runcie* of *Ouimette & Runcie*, Vergennes, for Plaintiff-Appellee Louis H. Kurrelmeyer, Jr.

*Thomas F. Heilmann* and *Wendy L. Fuller* of *Heilmann, Ekman & Associates, Inc.*, Burlington, for Defendant-Appellant Martina Kurrelmeyer.

¶ 1. **Burgess, D.J., Specially Assigned.** Martina Kurrelmeyer appeals an order of the Chittenden Superior Court declaring void, as a matter of law, the revocable inter vivos trust she created under her husband's durable power of attorney prior to his death. Mr. Kurrelmeyer's surviving children claimed the power of attorney did not grant authority to create a trust and that transfer of Mr.

Kurrelmeyer's property to the trust constituted unauthorized self-dealing and a breach of Martina Kurrelmeyer's fiduciary duty as her husband's agent. We reverse the superior court's determination that the trust is void as a matter of law, and remand for further proceedings to determine whether Martina Kurrelmeyer's actions breached her fiduciary duty of loyalty as her husband's agent.

¶ 2. The undisputed facts are summarized as follows. In 1996, Louis Kurrelmeyer executed two durable general powers of attorney to appoint his wife, Martina Kurrelmeyer, and his daughter, Nancy Kurrelmeyer, as attorneys-in-fact. Louis Kurrelmeyer was competent at the time he executed the powers of attorney. In December of 2000, Martina, pursuant to her powers under the durable power of attorney, executed a document establishing the "Louis H. Kurrelmeyer Living Trust," with herself and Nancy as co-trustees. Days after she created the trust, Martina transferred certain real estate owned by her husband, the "Clearwater" property, to herself and Nancy as co-trustees of the trust. At the time of the creation of the living trust and the transfer of the Clearwater property, Louis Kurrelmeyer was no longer competent. Mr. Kurrelmeyer died testate a year later, and Martina was appointed executrix of his estate.

¶ 3. Louis Kurrelmeyer's last will and testament, executed in 1980, contained a specific provision for the Clearwater property. Under the will, Martina would take a life estate in the property, with responsibility for taxes and upkeep, and upon her death the property would pass to Mr. Kurrelmeyer's surviving children as joint tenants with rights of survivorship. In contrast, the terms of the trust provide Martina additional rights with regard to the property. Under the terms of the trust, Martina may occupy the home as long as she wishes and the trust is permitted to pay the expenses on the property should she fail to do so. The trustees would be required, however, on Martina's unilateral request, to sell the home, with the sale proceeds to be used either to purchase another home for Martina or, alternatively, to be added to the trust principal. Additionally, the trust provides that all income from the trust property would be paid to Martina, as well as so much of the principal as the trustees deem necessary and proper for her support. Upon Martina's death, the trust principal would be distributed to Louis's children, if they survived him, with any deceased child's share to be distributed to that child's descendants or held in trust until such descendants reached the age of twenty-five. The trust

requires that there be at least one other trustee serving so long as Martina is serving as a co-trustee, and the co-trustees must act by mutual agreement.

¶ 4. During the probate administration of Louis Kurrelmeyer's estate, his son, Louis Kurrelmeyer Jr., objected to the exclusion of the Clearwater property from the inventory completed by Martina Kurrelmeyer. Claiming that Martina exceeded her authority in creating the trust, Louis Jr. asked the probate court to set aside the trust and include the Clearwater property in the probate estate to be distributed in accordance with Mr. Kurrelmeyer's will.[1] The probate court upheld the trust, and the children appealed to the superior court.

¶ 5. Martina Kurrelmeyer moved for summary judgment, arguing the creation of the trust and transfer of the Clearwater property to the trust were authorized under the broad authority granted to her by the durable power of attorney. The children moved for a judgment in their favor, arguing that the power of attorney did not authorize creation of a revocable trust, that the transfer of the Clearwater property to the trust was a breach of Martina's fiduciary duty because it constituted self-dealing, and that the transfer violated the gift-giving proscription of the power of attorney.

¶ 6. The superior court reversed the probate court's order. Granting summary judgment for the children, the superior court concluded that the power of attorney did not authorize Martina to create a trust. The court found the power of attorney ambiguous on the trust issue, and narrowly construed the language to authorize only maintenance of, and additions to, trusts already existing when the power of attorney came into being. The superior court also opined that, because the appointment of Martina as attorney-in-fact did not authorize her to make a will on behalf of the principal, she was without authority to convey his property in trust in a manner that would "alter" his existing will. Martina appealed, complaining that

---

[1] At the time of his death, Louis Kurrelmeyer had three surviving children — Louis Jr., Nancy, and Ellen. Nancy subsequently passed away, and Ellen became executrix of Nancy's estate. Additionally, the trust designates Ellen as Nancy's successor co-trustee. Because of this role, Ellen took no position in the probate court on the validity of the trust, but sought clarification of the title to the Clearwater property and questioned how the conveyance of the property affected Martina's homestead interest. For the sake of simplicity, and because counsel for Louis Jr., Ellen, and Nancy's Estate have represented the children's interests as aligned in this appeal, as well as in the appeal to the superior court, we refer to appellees collectively as "the children."

the superior court erred in applying a strict construction analysis rather than recognizing Mr. Kurrelmeyer's intention to make Martina his attorney-in-fact for general purposes, including trust creation, as is evident, she argues, from the plain language of the power of attorney.

¶ 7. On appeal from a grant of summary judgment, we apply the same standard as the trial court. *Wesco, Inc. v. Sorrell*, 2004 VT 102, ¶ 9, 177 Vt. 287, 865 A.2d 350. Summary judgment is appropriate where the undisputed facts demonstrate either party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Where the parties agree there are no contested issues of fact, the question of whether either party is entitled to judgment as a matter of law is reviewed de novo. *Bacon v. Lascelles*, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996). Our review of questions of law is nondeferential and plenary. *Wesco, Inc.*, 2004 VT 102, ¶ 9.

I.

¶ 8. We first address Martina's claim that the trial court erred in concluding as a matter of law that the power of attorney did not authorize her to create a trust on Louis Kurrelmeyer's behalf. We disagree with the superior court's characterization of the power of attorney as ambiguous, and find that the express language of the power of attorney authorized the attorney-in-fact to create a trust. The trial court invoked a doctrine of strict construction, relied upon in some jurisdictions, to seemingly resolve any arguable ambiguity against the attorney-in-fact claiming delegation. See *King v. Bankerd*, 492 A.2d 608, 611 (Md. 1985) (observing that "one well settled rule is that powers of attorney are strictly construed as a general rule and [are] held to grant only those powers which are clearly delineated" (internal quotations omitted) (alteration in original)). We are not persuaded that strict construction, rather than a construction to effect the principal's intent, is a preferred method of determining the scope of a power of attorney. See Restatement (Second) of Agency § 34 cmt. h (1958) (noting that while it is often stated that formal instruments denoting an agent's authority should be strictly construed, "[t]here should be neither a 'strict' nor a 'liberal' interpretation, but a fair construction which carries out the intent as expressed"). Determining the principal's intent is acknowledged as *the* primary objective, even in strict construction jurisdictions: "Although our predecessors recognized this rule [of strict construction] over a century ago ... they were careful to note that

the rule of strict construction 'cannot override the general and cardinal rule' that the court determine the intention of the parties." *King*, 492 A.2d at 611 (citation omitted). Accordingly, we will not apply a rule of narrow construction to particular words and phrases used in the power of attorney, but will examine the express terms and the context of the instrument as a whole to give effect to the principal's intent.

¶ 9. This approach is consistent with our analysis in *Schall v. Gilbert*, 169 Vt. 627, 741 A.2d 286 (1999) (mem.), in which we examined whether the scope of a power of attorney was limited, or "special," as opposed to broad, or "general":

> A power of attorney is a written authorization used to evidence an agent's authority to act on behalf of another person. It is often characterized as general or special. The more specific a power of attorney is concerning performance of individual acts, the more the agent is restricted from executing acts beyond the specific authority granted. Further, the Restatement (Second) of Agency § 3 cmt. a (1958) states:
>
>> In determining whether an agent is a general agent or a special agent, the number of acts to be performed in accomplishing an authorized result, the number of people to be dealt with, and the length of time needed to accomplish the result are the important considerations. Continuity of service rather than the extent of discretion or responsibility is the hallmark of the general agent.

*Id.* at 630, 741 A.2d at 289 (citations omitted).

¶ 10. To determine whether the power of attorney authorized Martina to create a trust, we look to Mr. Kurrelmeyer's "written authorization," entitled "Durable General Power of Attorney." As its title suggests, this power of attorney is indeed "general" and quite broad. The power of attorney was to survive, and be unaffected by, the principal's subsequent disability or incompetence. It authorizes Martina, as attorney-in-fact, to act in the principal's name "in any way which I myself could do, if I were personally present, with respect to the following matters to the extent that I am permitted by law to act through an agent." Among the delineated powers, the first subsection authorizes the agent "[t]o add all of my assets deemed appropriate by my said attorney to any trust of which I am the Donor" by transferring in trust a variety of types of property,

including stocks, bonds, bank accounts, real estate, and "other assets or property of any kind" owned by the principal. The subsection immediately following provides:

> In *addition*, I authorize my said attorney to: (i) *execute and deliver any assignments, stock powers, deeds or trust instruments*; (ii) sign my name to any instrument pertaining to or required in connection with the transfer of my property; (iii) give full receipts and discharges; (iv) re-register the title to stock certificates, bonds, notes, bills and other securities; (v) change the name on bank, brokerage and commodity accounts; (vi) withdraw any or all funds standing in my name in any bank; (vii) endorse and deliver any checks, drafts, certificates of deposit, notes or other instruments for the payment of money payable or belonging to me; (viii) change life insurance beneficiaries ... (ix) elect lump sum or optional settlements of life insurance ... and annuity proceeds and proceeds from a qualified plan or an individual retirement account; (x) convey any real estate, interest in real estate, any mortgages and notes or any beneficial interest in real estate which I may own or have any interest in; and (xi) record deeds of conveyance in the appropriate land records.

(emphasis supplied). The text continues, authorizing the attorney-in-fact to examine and obtain copies of the principal's will. The attorney is authorized to "make gifts to members of my family (other than himself or herself) whom my said attorney has reason to believe I would have wished to benefit, but my said attorney shall not give any more than $10,000.00 per year to any one donee." Among other powers, the attorney-in-fact is also granted unrestricted access to, and an unrestricted right to remove, the contents from "any and all warehouses, safe deposit boxes, drawers, and vaults" owned in the principal's name alone and in common with others. The attorney-in-fact is authorized to disclaim interests in property on behalf of the principal, to convey title to his motor vehicles, to "convey any and all real estate owned by [the principal] to any person or entity," and, finally, the attorney-in-fact is authorized

> [t]o do and perform all and every act and thing whatsoever necessary to be done in the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratify-

ing and confirming all that my said attorney may do pursuant to this power.

¶ 11. We conclude that the express terms of the power of attorney unambiguously grant the attorney-in-fact the authority to create a trust and to add assets to a trust to accomplish estate planning objectives. The first subsection, empowering the attorney to add any and all assets to a trust of which he is the donor, does refer to a trust already in existence, but does not suggest lack of authority to create a new trust when considered together with the second subsection — granting the power "to execute and deliver . . . trust instruments" expressly in *addition* to adding assets to existing trusts. The phrase "trust instrument" is commonly understood to refer to the document that brings the trust into existence. See Black's Law Dictionary 437 (8th ed. 2004) (defining a "declaration of trust" in part as "the instrument that creates a trust," also termed "trust instrument"). Just as a subsequent provision authorizes the attorney-in-fact to "execut[e] . . . deeds" and "easements," which we commonly read to include granting and conveying lands and creating rights of way, so too may the attorney-in-fact create a trust under the provision authorizing the attorney to "execute . . . trust instruments." Where a power is broadly drawn to include the authority to transact all business on behalf of the principal and delineates a variety of general acts, each particular task within the grant of authority need not be spelled out in exacting detail. *Schall*, 169 Vt. at 630, 741 A.2d at 289 (holding that authority to withdraw certificates of deposit at a particular bank need not be expressly delineated where power of attorney entrusted agent to make real estate decisions, enter contracts, and draw funds against principal's account). Given the express language granting the authority to execute trust instruments, particularly in the context of the breadth of the attorney's other express powers, including, ultimately, her authority to fully substitute herself for the principal to do all things "whatsoever necessary . . . to all intents and purposes" as the principal "might or could do if personally present," we find that the agent's authority under this power of attorney includes the authority to create a trust on the principal's behalf.

## II.

¶ 12. Alternatively, the children argue that, even if the principal intended to authorize the attorney-in-fact to create a trust, the power to create a trust is personal to the settlor and nondelegable as

a matter of law. We agree that certain acts may require personal performance as a matter of public policy, statutory law, or under the terms of an agreement. See Restatement (Second) of Agency § 17 cmt. b ("Duties or privileges created by statute may be imposed or conferred upon a person to be performed or exercised personally only. . . . The making of affidavits as to knowledge and the execution of wills are illustrations of acts commonly required by statute to be done personally."); see also 14 V.S.A. § 3504(b) (prohibiting the use of a power of attorney to authorize the agent to perform certain acts, such as making health care decisions or executing, amending, or revoking a will for the principal).[2] We do not agree, however, that delegation of authority to create a trust through a durable general power of attorney to serve the interests of the principal violates public policy as a matter of law, even when a trust's dispositive terms may serve a function similar to that of a will.

¶ 13. The use of a revocable living trust serves a number of legitimate purposes. Restatement (Third) of Trusts § 25 cmt. a (2003). For example, revocable trusts are widely used in estate planning and asset management as a means to avoid the costs and delays associated with probate administration, as a means to provide property management for settlors late in life by establishing trustees and successor trustees to assume continuing responsibility, and as a means to maintain privacy and flexibility in the management of assets beyond the life of the settlor. *Id.*, see also *id.* ch. 6, introductory note ("[W]ith its flexibility and its highly developed, prototypical, default body of ready-made fiduciary principles, the trust device is widely used in a broad variety of arrangements serving diverse purposes."). Revocable trusts allow the settlor to retain the ability to use the assets for support during lifetime, provide for ongoing asset management, and preserve the estate for the settlor's intended beneficiaries.

¶ 14. The fact that the trust here was created by an agent does not affect its legitimacy. See *id.* § 11(5) ("Under some circumstances, an agent under a durable power of attorney or the legal representative of a property owner who is under disability may create a trust on

---

[2] Vermont's Powers of Attorney Act, 14 V.S.A. §§ 3501-3516, was enacted subsequent to the execution of the relevant documents in this case. 2001, No. 135 (Adj. Sess.), § 2. Our reference to the Act here is for illustrative purposes. It is noteworthy, however, that the Legislature did not act to prohibit the use of powers of attorney to create trusts.

behalf of the property owner."); see also *id.* cmt. f (noting that despite restrictions against making a will for an incompetent person, it is proper for a principal to authorize an agent to create or modify a revocable inter vivos trust "to serve purposes that are financially advantageous to the estate, such as probate avoidance and managerial efficiency"). The children fail to demonstrate any sufficiently countervailing evil to compel this Court to declare such powers of attorney contrary to public policy and void as a matter of law.

¶ 15. We find unpersuasive and inapposite the cases cited by the children in support of their position that the power to create a trust is nondelegable. The courts in those cases found that the powers of attorney did not expressly authorize the agent to create a trust, which, as we hold above in Section I, is not the case with this power of attorney. See *Stafford v. Crane*, 241 F. Supp. 2d 1239, 1246-47 (D. Kan. 2002) (holding that trust was void where durable power of attorney did not specifically authorize attorney-in-fact to create a trust), *aff'd*, 382 F.3d 1175, 1183-84 & n.2 (10th Cir. 2004) (observing that "[t]he general weight of authority suggests that the power to create, modify, or revoke a trust is personal and non-delegable to an attorney-in-fact unless expressly granted in the power-of-attorney" and noting several states' codification of that rule); *Kotsch v. Kotsch*, 608 So. 2d 879, 880 (Fla. Dist. Ct. App. 1992) (holding that power of attorney did not authorize creation of trust to dispose of principal's property); *In re Jameison*, 2000 MT 190, ¶ 21, 8 P.3d 83 ("The Power of Attorney does not specifically grant the authority to create a trust, reflect [the principal's] intent to create a trust, or even mention a trust.").

¶ 16. For the same reason that trusts can be beneficial to an estate, we are not persuaded on the current record that this trust is necessarily an invalid usurpation of the principal's last will and testament. The trial court was concerned that, by conveying Clearwater to the trust, Martina did "indirectly what she [could] not do directly," that is, alter the will by depriving the children of their expected inheritance of Clearwater's appreciation. When the principal expressly granted his attorney-in-fact the power to convey realty from his estate, he must have anticipated that the terms of his will might be so altered. It is not clear, then, why conveyance of Clearwater to a trust would be a per se impermissible alteration of the will, when the power of attorney expressly authorized Martina to convey any real estate outright to others. Therefore, these additional

arguments do not persuade us that the trust must be rendered void as a matter of public policy.

## III.

¶ 17. The question of whether Martina's actions breached her fiduciary duties remains. Even though we conclude that Martina had authority from her principal to create a trust on his behalf, her authority to act under that power was not limitless. A fiduciary duty of loyalty is implied in every agency as a matter of law. See *John A. Westlund, Inc. v. O'Bryan Constr. Co.*, 123 Vt. 301, 308, 187 A.2d 507, 512-13 (1963) ("Every agency is subject to the legal limitation that it cannot be used for the benefit of the agent himself, or of any person *other than the principal*, in the absence of an agreement that it may be so used." (emphasis supplied)). The attorney-in-fact was prohibited from making gifts to herself by the express language of the power of attorney and was also prohibited from using the agency for her own benefit or the benefit of others except as authorized.

¶ 18. The children complained below that Martina's conveyance of the Clearwater property to the trust provided no benefit to Louis Kurrelmeyer, served no apparent tax or estate planning purpose, and was prohibited by the gifting provision of the power of attorney as well as by Martina's fiduciary duty of loyalty to her principal. Martina argued, in response, that the trust and conveyance were justified by generally recognized and prudent tax and estate planning objectives, that the conveyance of Clearwater to the trust could not, as a matter of law, constitute a gift prohibited by the power of attorney, and that the co-trustee approval requirement was a safeguard against any self-dealing.

¶ 19. Concluding, erroneously, that creating any new trust was void as beyond the authority of the attorney-in-fact, the superior court did not reach the additional question of whether the trust and conveyance were valid, as claimed by Martina, or a breach of fiduciary duty as claimed by the children. The court recognized general proscriptions against self-dealing by attorneys-in-fact and trustees, but did not address the parties' particular factual or legal claims on this topic. Despite recitations in their cross-motions for summary judgment, the parties do not appear to agree upon facts material either to Martina's contention that the dispositive terms of the trust and the conveyance of the Clearwater property were justified as prudent estate planning or to the children's contentions

that the terms of the trust and the transfer of property were unauthorized self-dealing.

¶ 20. Therefore, we remand the case to the superior court for further proceedings to consider whether there was a breach of a fiduciary duty on the part of Martina Kurrelmeyer, as agent, in light of all the relevant circumstances at the time the trust was executed.

*Reversed and remanded for further proceedings not inconsistent with this decision.*