### In re Estate of Louis H. KURRELMEYER

[992 A.2d 316]

No. 09-038

¶ 1. March 1, 2010. Louis H. Kurrelmeyer, Sr., died in 2001 and was survived by his second wife, Martina Kurrelmeyer, and by three children from his first marriage, including his son, Louis Kurrelmeyer, Jr. Son brings this appeal from a December 2008 decision in which the Chittenden Superior Court upheld the conveyance by wife of certain property from the estate into a trust. The property at issue is decedent's home in Shelburne (the Clearwater property), which has been estimated to be worth over $500,000. Son argues that wife's transfer of the Clearwater property into a trust was invalid for two reasons: (1) wife did not have the authority to make such a transfer under the written terms of the power of attorney, and extrinsic evidence of decedent's intent could not be used to expand such authority; and (2) wife violated her fiduciary duty under the power

of attorney by engaging in improper self-dealing. We conclude that wife's transfer of the Clearwater property was valid, and we affirm the trial court's decision.

¶ 2. This is not the first time that this case has come to this Court on appeal. In 2006, we issued an opinion addressing challenges to wife's establishment of a trust. See *In re Estate of Kurrelmeyer*, 2006 VT 19, 179 Vt. 359, 895 A.2d 207 (*Kurrelmeyer I*). In *Kurrelmeyer I*, we remanded the case to the trial court, and it is the trial court's decision on remand that is the subject of the current appeal.

¶ 3. The facts of this case can be briefly summarized. Decedent married wife in the mid-1970s. In 1980, decedent executed a last will and testament. Under the will, wife received a life estate in the Clearwater property, with decedent's surviving children taking ownership as joint tenants after wife's death. Decedent never updated this will.

¶ 4. In 1995, decedent had a major stroke. Soon afterward, decedent and wife began meeting with an estate planning attorney. The trial court found that these discussions were aimed primarily at providing greater financial support for wife than decedent's will provided.

¶ 5. In 1996, at the suggestion of the estate planning attorney, decedent executed two durable general powers of attorney, one appointing wife and one appointing one of his daughters from his first marriage, Nancy. We noted in *Kurrelmeyer I* that decedent was competent at the time he executed these powers of attorney. *Id.* ¶ 2. By the year 2000, decedent was no longer competent. *Id.*

¶ 6. In 2000, again following the advice of the estate planning attorney, wife used her power of attorney to establish a living trust, with wife and Nancy listed as co-trustees.[*] Wife then transferred the Clearwater property and other real estate owned by decedent into the trust. We noted in *Kurrelmeyer I* that the trust expanded wife's rights to the Clearwater property beyond the life estate provided to her in decedent's will:

> Under the will, [wife] would take a life estate in the property, with responsibility for taxes and upkeep, and upon her death the property would pass to [decedent's] surviving children as joint tenants with rights of survivorship. In contrast, the terms of the trust provide [wife] additional rights with regard to the property. Under the terms of the trust, [wife] may occupy the home as long as she wishes and the trust is permitted to pay the expenses on the property should she fail to do so. The trustees would be required, however, on [wife's] unilateral request, to sell the home, with the sale proceeds to be used either to purchase another home for [wife] or, alternatively, to be added to the trust principal. Additionally, the trust provides that all income from the trust property would be paid to [wife], as well as so much of the principal as the trustees deem necessary and proper for her support. Upon [wife's] death, the trust principal would be distributed to [decedent's] children, if they survived him, with any deceased child's share to be distributed to that child's descendants or held in trust until such descendants reached the age of twenty-five. The trust requires that there be at least one other trustee serving so long as [wife]

_____

[*] Sometime after decedent died, Nancy died, and decedent's other daughter, Ellen, took Nancy's place as co-trustee alongside wife.

is serving as a co-trustee, and the co-trustees must act by mutual agreement.

*Id.* ¶ 3.

¶ 7. By 2001, when decedent died and his estate went into probate, the Clearwater property was included in the trust created by wife, and the property was therefore not considered part of the estate. In *Kurrelmeyer I*, son challenged the creation of the trust. He argued that the trust was invalid and that the Clearwater property should therefore be part of the estate and divided according to decedent's will. Specifically, son argued that the power of attorney did not authorize wife to create a revocable trust. The trial court agreed and granted summary judgment to decedent's children. We reversed. We held that the power of attorney executed by decedent authorized wife to create a revocable trust. *Id.* ¶ 11.

¶ 8. Our ruling in *Kurrelmeyer I* addressed only the creation of the trust, which we held to be valid; we did not address whether wife could transfer the Clearwater property into the trust. Son argued in *Kurrelmeyer I* that this transfer was improper self-dealing in breach of wife's fiduciary duty as a trustee and in violation of an express provision in the power of attorney prohibiting wife from making gifts to herself. The trial court had never reached this issue. We noted that wife's "contention that the dispositive terms of the trust and the conveyance of the Clearwater property were justified as prudent estate planning" versus the "children's contentions that the terms of the trust and the transfer of property were unauthorized self-dealing" had yet to be determined. *Id.* ¶ 19. Accordingly, we remanded the case "to consider whether there was a breach of a fiduciary duty on the part of [wife], as agent, in light of all the relevant circumstances at the time the trust was executed." *Id.* ¶ 20.

¶ 9. On remand, the trial court held a hearing. At the hearing, the trial court allowed wife to present evidence — mainly in the form of testimony and written notes from the estate planning attorney — that the transfer of the Clearwater property carried out the intent of decedent to enhance the financial position of wife while also avoiding estate taxation through the use of trust instruments that were specifically recommended and designed by the attorney to accomplish decedent's goals. Son argues on appeal, as he argued in *Kurrelmeyer I*, that we should adopt a rule of strict construction whereby a power of attorney grants only those powers that are clearly and explicitly delineated. Thus, according to son, because the power of attorney did not explicitly grant wife authority to transfer the Clearwater property into the trust, wife did not have that authority. Son argues that this ends the matter and that the trial court therefore erred in considering extrinsic evidence in determining the scope of wife's authority. We disagree.

¶ 10. Whether courts can ever look at extrinsic evidence in a case such as this one presents a pure question of law. We review pure questions of law de novo. *Benson v. MVP Health Plan, Inc.*, 2009 VT 57, ¶ 4, 186 Vt. 97, 978 A.2d 33. In *Kurrelmeyer I*, we recognized that other jurisdictions have adopted the rule of strict construction urged by son, but we rejected this approach: "we will not apply a rule of narrow construction to particular words and phrases used in the power of attorney, but will examine the express terms and the context of the instrument as a whole to give effect to the principal's intent." 2006 VT 19, ¶ 8. Although we did not explicitly state that courts could look at extrinsic evidence, such a holding was implicit in our direction to "examine the context" in which the power of attorney was created. *Id.* Our remand also directed the trial court to examine "all the relevant circumstances" surrounding the creation

of the trust in 2000. *Id.* ¶ 20. One of the relevant circumstances here was whether wife was acting to fulfill the intent for which decedent granted wife the power of attorney in 1996. As we stated in *Kurrelmeyer I*, when interpreting a document such as a power of attorney, it is a "cardinal rule that the court determine the intention of the parties." *Id.* ¶ 8 (quotation omitted). Ideally, the intention of the parties will always be apparent from the express language of the power of attorney itself. Unfortunately, that is not always the case. Thus, in an instance such as this one, where there was significant and well-documented extrinsic evidence of the reasons for which decedent created the power of attorney, the trial court did not err in taking that evidence into consideration.

¶ 11. Looking at the extrinsic evidence provided at the hearing, the trial court held that "wife's conveyance into the trusts carried out her husband's wishes and intentions, which had been discussed and formulated with the estate plan[ning] attorney, who credibly testified here." This was a factual determination. As we have long held, "[a]s the trier of fact, it was the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence." *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997). We review factual findings "only for clear error." *Mullin v. Phelps*, 162 Vt. 250, 260, 647 A.2d 714, 720 (1994). We find no clear error here. The trial court had ample support for its conclusions that "[d]ecedent's overarching goal was to provide for his surviving wife" and that decedent intended that the power of attorney would allow wife to transfer the Clearwater property into the trust that she created.

¶ 12. Given that the trial court properly considered extrinsic evidence when evaluating wife's actions and that this evidence supported the court's conclusion that wife's actions fulfilled decedent's intent,

we find no merit in son's argument that wife violated her fiduciary duty and engaged in improper self-dealing or made an improper gift to herself when she transferred the Clearwater property into the trust. We noted in *Kurrelmeyer I* that the power of attorney made wife an agent of decedent and that a "fiduciary duty of loyalty is implied in every agency as a matter of law." 2006 VT 19, ¶ 17. Son argues that wife breached that duty by taking actions that benefitted only her, since transferring the Clearwater property into the trust would allow wife to sell the Clearwater property and then dip into the trust principal for her support, thereby decreasing son's eventual share of the trust. One significant problem with this argument is that it is speculative. We have previously noted that courts "will ordinarily not render decisions involving events that are contingent upon circumstances that may or may not occur in the future." *In re Robinson/Keir P'ship*, 154 Vt. 50, 57, 573 A.2d 1188, 1192 (1990); see generally *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (recognizing our constitutional duty to avoid rendering advisory opinions); cf. *In re 232511 Invs., Ltd.*, 2006 VT 27, ¶ 19, 179 Vt. 409, 898 A.2d 109 (refusing to rule on legal questions involving future actions that might or might not occur). Evaluating the actions that wife has actually taken to date, we cannot conclude that wife has violated her fiduciary duty to decedent or has given herself a gift that was not allowed under the terms of the power of attorney. To the contrary, as the evidence below indicated and as the trial court held, decedent intended the power of attorney to allow wife to take the precise actions she took here when she transferred the Clearwater property into a trust. Wife's actions were therefore in accord with decedent's intent, and there was no improper self-dealing.

*Affirmed.*