2011 VT 61

## In re Estate of Phillip Lovell

[25 A.3d 560]

No. 10-285

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed June 10, 2011

100

*Bettina V. Buehler* and *Ellen Kreitmeier*, Law Clerk (On the Brief) of *McCarty & Buehler, P.C.*, Brattleboro, for Appellants.

*Stephen S. Ankuda* of *Parker & Ankuda, P.C.*, Springfield, for Appellee.

¶ 1. **Reiber, C.J.** Defendants Charles and Hubert Lovell appeal a grant of summary judgment to plaintiff, Duane Amsden, in which the trial court found that Charles Lovell could not, pursuant to his powers as his father's attorney-in-fact, transfer title of his father's farm to himself and his brother, Hubert Lovell, where

the power of attorney failed to explicitly grant the power to make such a gift. We affirm.

¶ 2. The facts of this case are not in dispute. On June 6, 1997, Phillip I. Lovell executed a will appointing his son, defendant Charles Lovell, and his stepson, plaintiff Duane Amsden, as co-executors. He also executed a power of attorney (POA) naming defendant Charles Lovell as his attorney-in-fact. The inventory of Phillip Lovell's estate, filed June 4, 2008, listed a farm in Springfield, Vermont (the farm) as belonging to the estate. On May 28, 2003, Phillip Lovell's wife, Zada Lovell, quitclaimed her interest in the farm to her husband. The next day, defendant Charles Lovell, acting as Phillip Lovell's attorney-in-fact, executed a quitclaim deed, conveying the farm from Phillip Lovell to defendants for no consideration. Several of the Lovell's children and stepchildren, including plaintiff, signed a consent statement dated May 31, 2003, approving the transfer. The statement explained that they were "consenting to the exercise of Charles I. Lovell's Power of Attorney" to quitclaim the farm to defendants because the parties had come to a consensus that this was "in the best interest of Zada Lovell and Phillip Lovell" but that "[a]s soon as reasonably possible after the transfer [wa]s completed, [they] would] all enter into a family discussion to make provisions for the ultimate distribution of the farm." Phillip Lovell died the following week on June 4, 2003.

¶ 3. In June 2008, following the death of Zada Lovell, plaintiff filed a declaratory judgment action in the probate court claiming the transfer of the farm to defendants was invalid under 14 V.S.A. § 3504(e) and (f) (the amended POA statute) enacted in 2002, and seeking to establish the estate of Phillip Lovell as the farm's rightful owner. The probate court issued a declaratory judgment order in favor of defendants, finding that the quitclaim transfer was valid because the language of the POA failed to restrict defendant Charles Lovell's power to gift the property to himself or others. The superior court reversed, granting plaintiff's motion for summary judgment. The court found that the amended POA statute prohibited an attorney-in-fact from making gifts of the principal's property to himself or others unless the POA "explicitly" granted such authority. Defendants appealed.

¶ 4. On appeal from summary judgment, "[w]e review the trial court's decision de novo, using the same standard as the trial court." *Clayton v. Unsworth*, 2010 VT 84, ¶ 15, 188 Vt. 432, 8 A.3d

1066. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the [statement of material facts], show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3).

¶ 5. Subsection (e) of the amended POA statute mandates: "No agent may make a gift or a loan to a third party unless the terms of the power of attorney explicitly provide for the authority to make gifts or loans." 14 V.S.A. § 3504(e). Subsection (f) declares: "No agent may make a gift or a loan to him or herself of property belonging to the principal unless the terms of the power of attorney explicitly provide for the authority to make gifts or loans to the agent." *Id.* § 3504(f). The language of Phillip Lovell's power of attorney granted Charles Lovell the power:

> [t]o negotiate, execute, acknowledge and deliver leases or deeds upon any and all real property and premises owned by [Phillip Lovell], and particularly upon any real property located in Springfield, Vermont and to collect, demand and receive any rents which may become due to me from any tenants of [Phillip Lovell] or tenants as a result of the power of attorney; and to do any other acts pertaining to said property that [Phillip Lovell] might do; including the signing of agreements of sale or other necessary papers.

It also granted him:

> full authority and power to do and perform any and all other acts necessary or incident to the performance and execution of the powers herein expressly granted, with power to do and perform all acts authorized hereby, as fully to all intents and purposes as the grantor might or could do if personally present, with full power of substitution.

¶ 6. Defendants argue that this POA provision is broad enough to include the power to transfer gifts, despite the fact that such power is nowhere "explicitly" included in the POA, because it is written with enough specificity to meet the standard set by *In re Estate of Kurrelmeyer*, 2006 VT 19, 179 Vt. 359, 895 A.2d 207. In *Kurrelmeyer*, we upheld a transfer of real estate made by two

attorneys-in-fact, wife and daughter of the grantor, into a trust they had created naming themselves trustees and the wife as beneficiary. *Id.* ¶¶ 2-3. We held that the transfer was valid despite the fact that the explicit POA language limited the attorneys-in-fact to "mak[ing] gifts to members of [the principal's] family (other than [the principal] himself or herself)." *Kurrelmeyer*, 2006 VT 19, ¶¶ 10-11; see also *In re Estate of Kurrelmeyer*, 2010 VT 20, ¶ 12, 187 Vt. 620, 992 A.2d 316 (mem.) (stating Court could not conclude wife had violated fiduciary duty to decedent or given herself gift not allowed under POA). The POA in *Kurrelmeyer* gave the wife and daughter explicit authority to "execute and deliver . . . trust instruments" in addition to broad authority to transact "in any way which [the principal him]self could do, if [he] were personally present." *Kurrelmeyer*, 2006 VT 19, ¶¶ 10-11. We concluded that while the POA in *Kurrelmeyer* limited gift giving and did not grant the wife and the daughter the "explicit" power to create a trust for the wife's own benefit, it did explicitly grant her the power to convey real estate to any person or entity, to transfer real estate into a trust, and to do anything that the principal might do himself. We held that such language, granting specific authority to create trusts without limitation, necessarily implied the authority to create a trust for the benefit of anyone, including the wife. Defendants argue that the language here granting Charles Lovell the authority to "do any other acts pertaining to [principal's real property] that [the grantor] might do" is equally broad and is therefore sufficient to grant him the power of transfer.

¶ 7. The distinction between these cases, however, lies not in the language of the POAs, but rather in the language and effective date of the amended POA statute and its relation to the exercise of power under any ?term" of the POA. In *Kurrelmeyer*, both the execution of the power of attorney and the subsequent transfer of property into the trust were complete *before* the amended POA statute became effective in 2002. The transfer in *Kurrelmeyer* was therefore not subject to the amended POA statute's limitation on the power to make gifts, and our analysis was based upon a construction of the POA under our common law alone. See *Kurrelmeyer*, 2006 VT 19, ¶ 2 (noting power of attorney executed in 1996 and property transferred to co-trustees in 2000). Here, on the other hand, the property transfer occurred after the effective date of the amended POA statute.

■ ■ ¶ 8. Under 14 V.S.A. § 3515(b): "[a]ny *term* of a power of attorney, executed after the effective date of [the POA statute] . . . which is otherwise inconsistent with, the provisions of this subchapter, shall be void and unenforceable." (Emphasis added.) This provision is clarified by 14 V.S.A. § 3515(a), which explains that "[t]he duties and obligations of agents under [the POA statute] shall be deemed incorporated into *all* powers of attorney." *Id.* § 3515(a) (emphasis added). Reading these provisions in their entirety, it appears that even for a POA created prior to the effective date of the statute, any exercise of authority under that POA which occurs after the statute's effective date must conform with the entire statute or the execution is invalid. The POA granting Charles Lovell authority to make transfers in his father's stead was created prior to the effective date of the amended POA statute; however, he exercised the term providing him power of transfer after the effective date. The term providing the power to transfer did not give him the explicit power to make gifts, as required by the amended POA statute, and thus an attempt to exercise authority pursuant to that term after the statute's effective date was void and unenforceable.[*]

¶ 9. Defendants claim that the equitable principles of laches and estoppel should bar plaintiff's claims because plaintiff signed a consent statement approving the farm's transfer and waited an unreasonable amount of time before bringing his claim. Defendant Charles Lovell contends that this delay was prejudicial to his interests because he paid taxes and made improvements to the farm without contributions from the alleged co-tenants. The lower court did not address these arguments, but as it did not grant laches relief, we assume it found them unpersuasive. We agree.

■ ¶ 10. When a party fails "to assert a right for an unreasonable and unexplained lapse of time, when the delay has been prejudicial to the adverse party, rendering it inequitable to

_____

[*] Defendants argue that despite this, the quitclaim of the farm was nevertheless valid because the "grandfather" provision, 14 V.S.A. § 3516, excuses the transfer from strict compliance. The grandfather provision of the amended POA statute states "[a] power of attorney shall be valid if it: (1) complies with the terms of this subchapter; or (2) is executed before July 1, 2002 and valid under common law or statute existing at the time of execution." 14 V.S.A. § 3516. However, the question here is not whether the POA is a valid instrument. Rather, the question is whether the exercise of a power granted by a term of the POA, after the effective date of the POA statute, was valid.

enforce the right," laches will bar relief. *Comings v. Powell*, 97 Vt. 286, 293, 122 A. 591, 594 (1923). "But lapse of time is not enough. Laches involves prejudice, actual or implied, resulting from the delay. It does not arise from delay alone, but from delay that works disadvantage to another." *Id.* at 294, 121 A. at 594. As an equitable remedy, "laches is so much a matter of discretion by the lower court that its action will not be disturbed unless clearly shown to be wrong." *In re Vermont Elec. Coop.*, 165 Vt. 634, 635, 687 A.2d 883, 885 (1994) (mem.) (quotation omitted).

■ ¶ 11. Defendants argue that the doctrine of laches forecloses plaintiff from bringing this claim because he filed it over four years after the underlying property transfer and signature of a consent statement in which plaintiff agreed to the transfer. However, we do not believe the underlying transfer is the proper moment from which to measure plaintiff's delay. The consent statement upon which defendants rely is explicit that the transfer to defendants was made "[i]n consideration of the consensus that it is in the best interests of Zada Lovell and Phillip I. Lovell to transfer the family farm to Hubert J. Lovell and Charles I. Lovell *during the lifetime* of Zada Lovell and Phillip I. Lovell." (Emphasis added.) The statement goes on to explain that the parties would "enter into a family discussion to make provisions for the ultimate distribution of the farm" at a later date. The transfer was made for the benefit of Phillip and Zada Lovell during their lifetimes, and hence one would not expect a challenge to the transfer until that purpose had expired. Thus, the death of Zada Lovell seems a more appropriate date to focus on in any determination of the reasonableness of plaintiff's delay.

¶ 12. Plaintiff filed the petition to reopen the estate of Phillip Lovell only five months after Zada Lovell's death. We cannot conclude that this delay was unreasonable, and we certainly cannot conclude that the trial court's decision not to consider laches was clearly wrong.

*Affirmed.*